J. T. EVANS *et al.* Appellants, *vs.* JOHN H. HOLMAN *et al.*
Appellees.

*Opinion filed April 21, 1910.*

1. DEFAULT—*when decree cannot be entered against bondhold-ers.* Where a village purchases an electric light plant subject to a mortgage indebtedness secured by bonds which the village does not agree to pay, the only rights the bondholders can assert are against the property and the electric light corporation which issued the bonds, and in litigation between tax-payers and the village, involving the power of the village to make the purchase and levy taxes, no decree can be entered affecting the rights of the bondholders, though they were made parties by publication, as unknown owners, and defaulted.

2. MUNICIPAL CORPORATIONS—*what is a mere device to evade constitutional provision against incurring indebtedness.* A plan whereby a village having $4200 as the constitutional limit of indebtedness acquires at a price of $11,496 an electric light plant having a mortgage indebtedness of $7296 by issuing $4200 in bonds is a mere scheme to evade the constitution, even though the contract provides that the village shall not assume or agree to pay the mortgage debt, since the indebtedness is nevertheless a debt of the village which it must pay or lose the property.

3. SAME—*when a municipal corporation does not create an indebtedness.* The purchase, by a city or village, of property which is to be paid for out of the income of the property itself is not the creation of an indebtedness, within the meaning of the provision of the constitution limiting the amount of indebtedness which may be incurred by a municipal corporation.

4. SAME—*it is not essential that obligation to pay shall be direct.* While there must be a debt to constitute a mortgage there need not be any promise of the mortgagor to pay the debt, and it is not essential that the obligation to pay shall be direct.

5. SAME—*when injunction should be limited to paying mortgage debt out of income of property.* Where tax-payers, instead of attacking the validity of the entire transaction whereby a village purchased an electric light plant, concede that the purchase is valid to the amount of the bonds issued by the village, which equals the amount of indebtedness it could constitutionally incur, and seek merely to enjoin the village from paying the mortgage debt to which the property is subject, the only relief which ought to be given to the complainants is to enjoin the payment of the mortgage debt except out of the net income of the electric light plant after paying operating expenses and necessary repairs.

6. SAME—*street lighting agreement is extinguished by purchase of plant by village.* An agreement by a village to pay a certain annual price per light for a specified number of street lights for a period of thirty years creates an indebtedness for the whole amount, but the purchase of the electric light plant by the village immediately after its construction puts an end to the agreement and renders an injunction to restrain payment unnecessary, even though the indebtedness incurred exceeds the constitutional limit.

APPEAL from the Circuit Court of Clay county; the Hon. JAMES C. McBRIDE, Judge, presiding.

MONROE & MONROE, for appellants.

T. S. WILLIAMS, State's Attorney, CHARLES Æ. MARTIN, JOHN W. THOMASON, and JAMES H. SMITH, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 16, 1907, the president and board of trustees of the village of Clay City, in Clay county, passed an ordinance approved on that date and designated ordinance No. 63, granting to Theodore Fisher the right to set up and maintain poles, wires and other structures and devices in the streets of the village in connection with an electric light plant to be constructed by him for the purpose of furnishing light, heat and power to the village and its inhabitants for the period of thirty years, and the ordinance provided that the village should pay him $70 per annum for each of twenty-three arc lamps during said period for lighting the streets, alleys and public grounds. At the same meeting another ordinance was passed, and approved at the same time, designated ordinance No. 64, which provided for issuing bonds of the village, dated June 1, 1907, to the amount of $4200, drawing interest at six per cent, payable annually, for the purchase of the electric light plant and property, and they were to show on their face that they

were issued to provide money for that purpose. Five per cent of the total taxable property within the village as equalized for the previous year was $4200, and that was the limit of indebtedness that could be incurred. Eleven days afterward, on March 27, 1907, before the plant was constructed, a contract was executed by Fisher and the village, through the president and clerk, reciting the passage of the ordinance granting the license to Fisher and that he intended to incorporate a company and convey his rights and the property to said corporation, which should issue bonds to the amount of $7296, maturing serially, beginning June 1, 1908, and bearing interest at six per cent, to be secured by a first mortgage on the plant, poles, wire circuits and all machinery and appurtenances and property belonging to the plant and also the rights in the streets. By that contract Fisher agreed that the plant, when completed, should be conveyed to the village at the price of $4200, to be paid in cash or village bonds to be issued under ordinance No. 64 and subject to the lien of the mortgage, for $7296, to be made by the corporation. The village agreed to purchase the property and issue its bonds in the sum of $4200 to pay for the same, subject to the mortgage, but the village was not to assume or agree to pay the mortgage debt. Fisher organized a corporation under the name of Clay City Electric Light and Power Company of Beardstown, in Cass county, and on May 14, 1907, made a conveyance to the corporation of the contemplated electric light plant and all his rights under ordinance No. 63. The corporation then issued bonds to the amount of $7296. The bonds provided for in ordinance No. 64 to the amount of $4200, dated June 1, 1907, were issued and delivered to Fisher. The plant was completed and the poles erected and wires strung in the streets, and when so completed, the corporation, on August 29, 1907, conveyed the same, as encumbered, for $7296, to the village, and the deed was accepted at a special session held at that time. The an-

nual interest on the bonds issued by the village amounted to $252, and the taxes levied for 1908 included interest on bonded indebtedness to the amount of $645, the excess being for interest on the mortgage debt. At a meeting of the president and trustees held on June 1, 1908, the clerk was instructed to draw an order for $1440.51 in payment of one of the mortgage bonds of $750, interest on the mortgage indebtedness of $437.06 and interest on the village bonds for $252, amounting, with exchange, to $1440.51, which was paid. The appellants, twenty-four residents and tax-payers of the village, filed their bill in this case in the circuit court of Clay county, to the March term, 1909, alleging that all indebtedness above the $4200 of bonds issued by the village was illegal and void and all taxes levied for bonded indebtedness above the amount necessary to meet what was then due on said bond issue was illegal. The town and county collectors, the village of Clay City, the electric light and power company, Theodore Fisher, R. H. Garm and the unknown owners of the bonds issued by the electric light and power company were made defendants, and the court was asked to enjoin the collectors from collecting said excess of taxes and to enjoin the village from making any appropriation of any tax or village funds, or levying any tax for the purpose of paying any part of the mortgage indebtedness of $7296, or any interest thereon, and from diverting any other fund of said village to the payment of said debt, or any part thereof, and from levying any tax to pay, or paying from any fund, anything for the electric lighting agreed to be paid by ordinance No. 63. The bill was answered and the court heard the cause and entered a decree enjoining the collectors from collecting that part of the taxes alleged to be illegal and enjoining the village from paying any part of the mortgage indebtedness, or the interest thereon, from any funds raised by taxation. From that decree the complainants appealed to this court and have assigned for error the refusal of

the court to grant the full relief prayed for in the bill, and cross-errors have also been assigned by the appellees.

Publication was made to the unknown owners of the bonds issued by the electric light and power company and secured by the mortgage, but there was no appearance by any of them. They were defaulted, and it is contended that the court erred in not entering a decree against them upon such default. They held bonds issued by the electric light and power company which the village had not agreed to pay, and the only rights they could assert were against the corporation issuing the bonds and the property mort-gaged to secure the same. The village could pay the bonds or lose the plant, but neither the village nor the complain-ants, as tax-payers, had any rights against the bondholders, and even if the court had obtained jurisdiction of such bondholders so as to adjudicate their rights, no decree in favor of the complainants could have been entered against them. The court did not err in failing to enter a decree against the unknown owners of the bonds secured by the mortgage.

The two ordinances passed at the same time were but separate parts of one plan, which, together with the con-tract made a few days afterward, completed the arrange-ment. The plan was that the village should acquire an electric light plant at the price of $11,496, issue bonds to the amount of $4200, (which was the constitutional limit of indebtedness,) and afterward pay $7296 as the mort-gage indebtedness matured or lose the property. It was provided in the contract for the purchase that the village was not to assume or agree to pay the mortgage indebted-ness, but it was none the less an indebtedness of the village, since the property purchased was pledged to pay it. While there must be a debt to constitute a mortgage, there need not be any promise of the mortgagor to pay the debt, and it is not essential that the obligation to pay should be di-rect. (*City of Joliet* v. *Alexander*, 194 Ill. 457.) It would

be absurd to suppose that the electric light and power company would sell its property to the village for $4200 and pay its bonds to the amount of $7296, and it is beyond question that it was expected and intended that the village should pay the mortgage debt. The plan was merely a scheme concocted for the purpose of evading the constitution, and devices for that purpose have never succeeded, whether planned with ingenuity or as transparent and shallow as this one. The scheme is of the same character. as those passed on by the courts in *Browne* v. *City of Boston,* 179 Mass. 321, *Voss* v. *Waterloo Water Co.* 163 Ind. 69, *Mayor* v. *Gill,* 31 Md. 375, *Earles* v. *Wells,* 94 Wis. 285, and *Reynolds* v. *City of Waterville,* 92 Me. 292. It is a counterpart of the scheme proposed by the city of Boston and passed on in the case of *Browne* v. *City of Boston, supra,* by which the city, with the power to become indebted but little over $24,000, was to purchase property which the owners were to mortgage for $202,000, and the city appropriated $24,000 for the purchase of the equity. The city would either have to pay the mortgage indebtedness or have the property taken from it by foreclosure proceedings, and the court had no difficulty in determining the true character of the transaction and enjoining the city from carrying it out. The attempt to evade the constitution in this case was illegal and the transaction void and the village might have been enjoined from executing the plan, but the complainants did not choose to take that course. By their bill they made no objection to the purchase of the plant nor to the issue of the bonds by the village, but they sought to have the village enjoined from paying any of the purchase price above the $4200, which would result in the speedy loss of the property and the $4200 paid upon it. That would not be a proper enforcement of the constitutional provision against indebtedness above five per cent of the value of the taxable property of the village and would be neither just nor equitable. The

complainants conceded the validity of the purchase but sought to prevent the contemplated payment for the property, while the defendants insisted that the whole transaction was legal and their counsel assert that the income of the plant will pay for it. In the condition of the pleadings and the attitude of the parties, it appears to us that the only relief that can or ought to be given to the complainants is to enjoin the payment of the mortgage indebtedness except out of the net income from the electric light plant after paying operating expenses and necessary repairs. It is clear that no decree ought to be entered which would recognize a part of an illegal transaction as valid and deprive the village of all benefits from the payment of $4200 conceded to be legal. A city or village does not create an indebtedness by obtaining property to be paid for wholly out of the income of the property, (*City of Joliet* v. *Alexander, supra,*) and if this plant will pay for itself there will be no further violation of the constitutional prohibition.

Under the decisions of this court the agreement to pay $1610 annually for arc lights during thirty years would constitute an indebtedness for the whole amount and would be illegal. (*City of Chicago* v. *McDonald,* 176 Ill. 404; *City of Chicago* v. *Galpin,* 183 id. 399.) But the purchase of the plant immediately after its construction put an end to the agreement and there was no reason for enjoining payment under ordinance No. 63.

There is no merit in the cross-errors assigned which question that part of the decree enjoining the excessive tax.

The decree will be reversed and the cause remanded to the circuit court, with directions to enter a decree enjoining the village from paying the mortgage indebtedness, or any part of it, or the interest thereon, except from the net income of the electric light plant after payment of operating expenses and repairs.

*Reversed and remanded, with directions.*