208    APPELLATE COURTS OF ILLINOIS.

Lewis v. Clay City Electric Light & Power Co., 194 Ill. App. 208.

defendant was duly notified, and that defendant did not reserve the right of cancellation of the order, the plaintiff could recover the contract price, even though defendant refused to accept the goods, *held* correct.

McBRIDE, J., having tried this case in the court below, took no part on the hearing in this court.

---

## Jeanette Lewis, Executrix of the Estate of T. B. Lewis, Appellee, v. Clay City Electric Light & Power Company et al., Appellants.

MUNICIPAL CORPORATIONS, § 1141*—*effect of purchase of lighting plant in excess of authorized indebtedness on rights of mortgagee.* Where a village, whose legal bonded indebtedness could not exceed $4,200, bought an electric light heating and power plant pursuant to the terms of an agreement providing that the village should pay $4,200 in cash or bonds and that village bonds should be issued for the purpose, and that the property should be subject to a first mortgage lien for $7,296, the village expressly not assuming this debt, and the village was unable to pay for the plant out of the income derived from its operation, but such plant was in fact operated at a loss, the holder of the first mortgage is not entitled to a first lien and a foreclosure to the exclusion of the rights of the village, but only to its pro rata share of the proceeds of the sale based upon the amount that each had contributed, including cost of repairs by the village, after paying the costs and expenses of the suit and a reasonable amount for the use of the plant, to be deducted from the village's share.

Appeal from the Circuit Court of Clay county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded with directions. Opinion filed May 1, 1915. Refiled July 6, 1915.

MONROE & MONROE, for appellant Village of Clay City.

KEITHLEY & KEITHLEY, for appellee.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Justice Higbee delivered the opinion of the court.

This was a foreclosure suit arising out of the following facts and circumstances as shown by the proofs: On March 16, 1907, the president and board of trustees of the village of Clay City, Illinois, passed an ordinance granting to Theodore Fisher a franchise to construct, operate and maintain an electric light and power plant in said village and to use the streets and alleys of the village for the purpose of erecting poles and stringing wires for said plant, and contracting with him for twenty-three arc lights to be placed in such streets and alleys, agreeing to pay him the sum of $70 per annum for each of said lights for the period of thirty years. On the same day said village authorities also passed an ordinance providing for the issuing of village bonds to the amount of $4,200, bearing interest at the rate of six per cent. per annum, for the purpose of paying for the electric light plant, described in the ordinance. On March 27, 1907, an agreement or arrangement was entered into between Fisher and the village officers acting for the village, wherein was recited the granting of the franchise by the village to Fisher; that the village desired to purchase the plant to be erected by him when completed; that Fisher intended to cause a corporation to be organized and to convey said franchise and the property rights and privileges pertaining thereto to said corporation, and to bond the entire plant for the sum of $7,296, the bonds to be dated June 1, 1907, nine of them being for $750 and the tenth, being the one last maturing, for $546; that said bonds were to bear interest at the rate of six per cent. per annum, to be secured by first mortgage on the electric light, heating and power plant, and all the other property pertaining thereto, belonging to the corporation; that each year there should be paid one bond for $750, as well as the interest on the whole

210  APPELLATE COURTS OF ILLINOIS.

Lewis v. Clay City Electric Light & Power Co., 194 Ill. App. 208.

of the bonded indebtedness. And said Fisher agreed that on the completion of said plant he would convey the same subject to said mortgage lien of $7,296 to the village, for the sum of $4,200, to be paid in cash or village bonds. It was also agreed by the village that it would purchase said corporate property at the price named and issue village bonds in the sum of $4,200 to pay for the same, and it was further mutually agreed that said village in its purchase of the plant did not assume or agree to pay said indebtedness to be secured by said first mortgage or trust deed. On May 10, 1907, the contemplated corporation was organized pursuant to the agreement with a capital stock of $12,000, divided into one hundred twenty shares of the par value of $100 each. Of this stock Fisher subscribed for sixty shares, H. M. Schmoldt fifty-nine shares, and C. C. Garm one share. The three shareholders were elected directors and Schmoldt was also elected president and Garm secretary. All three resided in Beardstown, Illinois, and the principal office was located in that place. On May 14, 1907, Fisher conveyed the property to the corporation so formed, which was known as the Clay City Electric Light & Power Company and on June 1st following, the corporation issued bonds for the sum of $7,296, payable as above provided, and to secure the same conveyed by its trust deed the corporate property to R. H. Garm as trustee. On June 18, 1907, the village trustees issued the bonds of the village for $4,200, and delivered them to the Clay City Electric Light & Power Company to pay for the plant and property connected therewith according to the above agreement, and on August 29th following, said corporation conveyed the plant and other property mentioned in the agreement, incumbered by said lien for $7,296, to the village, and the latter accepted the same. On June 4, 1908, the village paid the first of the $750 bonds and the interest on all of the mortgage bonds for one year. There-

after, some twenty-four taxpayers of said village brought suit to restrain and enjoin the collection of any excess of taxes levied for the payment of any debt connected with said electric light plant, except that secured by the bonds issued by the village amounting to $4,200, and to enjoin the village from making any appropriation of funds or levying any tax for paying any part of said mortgage indebtedness of $7,296 or the interest thereon or any part thereof.

The suit was based on the fact that the total amount of taxable property within the corporate limits of the village for the year preceding the issuing of the bonds was $84,018, and that the constitutional limit of five per cent. upon the taxable property of the village was therefore the sum of $4,200, which was the amount of the bonds issued directly by the village; that the arrangement made by the village to accept the property, subject to the mortgage, made the electric light plant, in fact, cost the village the sum of $11,496, which was much in excess of this limitation and therefore a violation of the constitutional provision in that regard.  The Circuit Court entered a decree enjoining the collectors from collecting any of such excess of taxes and enjoining the village from paying any part of the mortgage indebtedness, or the interest thereon, from any funds raised by taxation.  From this decree an appeal was taken to the Supreme Court, where it was held that the transaction, composed of the passage of said ordinance, the contract between the village and Fisher and the subsequent proceedings connected therewith, constituted as a whole, a device to evade the constitutional provision, limiting the amount of indebtedness which could be properly contracted by the village and was therefore void.

While the decree of the trial court was in its general features sustained, the relief granted was enlarged, the decree being reversed and the cause remanded with directions to enter a decree enjoining the village

from paying the mortgage indebtedness or any part of it or the interest thereon, except from the net income of the electric light plant, after payment of operating expenses and repairs. *Evans v. Holman,* 244 Ill. 596. In the course of the opinion in that case it is said: "The attempt to evade the constitution in this case was illegal and the transaction void and the village might have been enjoined from executing the plan, but the complainants did not choose to take that course. By their bill they made no objection to the purchase of the plant nor to the issue of the bonds by the village, but they sought to have the village enjoined from paying any of the purchase price above the $4,200, which would result in the speedy loss of the property and the $4,200 paid upon it. That would not be a proper enforcement of the constitutional provision against indebtedness above five per cent. of the value of the taxable property of the village and would be neither just nor equitable. The complainants conceded the validity of the purchase but sought to prevent the contemplated payment for the property, while the defendants insisted that the whole transaction was legal and their counsel assert that the income of the plant will pay for it. In the condition of the pleadings and the attitude of the parties, it appears to us that the only relief that can or ought to be given to the complainants is to enjoin the payment of the mortgage indebtedness except out of the net income from the electric light plant after paying operating expenses and necessary repairs. It is clear that no decree ought to be entered which would recognize a part of an illegal transaction as valid and deprive the village of all benefits from the payment of $4,200 conceded to be legal. A city or village does not create an indebtedness by obtaining property to be paid for wholly out of the income of the property (*City of Joliet v. Alexander,* 194 Ill. 457), and if this plant will pay for itself

there will be no further violation of the constitutional prohibition.''

Appellee, the complainant in the bill filed in this case, alleged that the unpaid mortgage bonds issued by the Clay City Electric Light and Power Company on said property, amounting to $6,546, had come into his hands for value received in the general course of business and that he is the owner of the same, and that on account of default in payment of a portion of said bonds as they came due and the interest thereon, the whole of the principal, with accrued interest, has now become due. He made the Clay City Electric Light & Power Company, Robert H. Garm, trustee, and village of Clay City, Illinois, parties defendant and asked that an account may be taken of the amount due on said bonds and that the defendants, except Robert H. Garm, may be decreed to pay the complainant whatever sum shall appear to be due him within a short day, and that in default thereof, said premises and electric light plant and all appurtenances thereunto belonging may be sold to satisfy said amount due and costs. The Clay City Electric Light & Power Company and Robert H. Garm failed to answer said bill and were defaulted. The village of Clay City answered the bill, denying appellee's right to a first lien on the property and also that he had any right, power or authority to bring the suit, and filed its cross-bill making the Clay City Electric Light and Power Company, appellee T. B. Lewis and R. H. Garm defendants.

The cross-bill, after setting out the facts somewhat as above stated, alleges that the income from the light plant is not sufficient to pay the operating expenses and repairs of said plant, and that the village had operated the plant for the five preceding years at an annual loss of $1,600 over and above the income derived therefrom, and that if said plant is forced to sale, it will not sell for more than enough to satisfy

214    APPELLATE COURTS OF ILLINOIS.

Lewis v. Clay City Electric Light & Power Co., 194 Ill. App. 208.

said mortgage bonds, the interest thereon and costs of foreclosure, and that if the proceeds of sale are so applied, the village will lose all that is paid thereon, amounting in the aggregate to some $7,500. The cross-bill then asks that an account may be taken of the amount of money contributed by the village in erecting said plant, the amount it has paid on the village bonds in principal and interest, and the amount it has paid on said mortgage bonds in principal and interest, and also the amount contributed in the construction of · said plant by said Clay City Electric Light and Power Company; that said plant may be sold under the direction of the court and the proceeds therefrom, after paying the costs and expenses of suit, be pro rated between the cross-complainant and the owners of said mortgage bonds, in the proportion that the amount of funds each has contributed towards the erection of said plant bears to the total cost of said plant. Upon the hearing it was shown that said H. M. Schmoldt, one of the organizers of the corporation, who took part in the arrangements, whereby said village was to buy the plant, had owned the bonds sued on; that he died June 16, 1909, willing his property to his wife, Mrs. Lena Schmoldt, and daughter, Jennie E. Schmoldt; that the daughter married appellee T. B. Lewis, who, in foreclosing the lien, was acting for them but that he was the holder of the bonds with their consent for the purpose of prosecuting the suit. The court on the hearing dismissed the cross-bill and entered a decree of foreclosure as prayed in the original bill, and from that decree the village of Clay City has prosecuted this appeal, contending that its cross-bill should have been sustained and the relief therein prayed for granted.

The position taken by appellee is that the Electric Light and Power Company, being a private corporation, legally organized, had a right to mortgage the plant which was its own property at the time, and

that the foreclosure of the mortgage is something with which the village is not directly concerned and which it cannot prevent. Were this an ordinary case of the foreclosure of a mortgage by the party holding the mortgage indebtedness, this position would be correct, but in this case there are unusual conditions existing which would seem to preclude the application of the ordinary rule. Had the officers of the village been acting in this case as private individuals in conducting the negotiations with Fisher and the light and power company, there would be no doubt of the right of the holder of the mortgage indebtedness as against them to foreclose his lien, but the village as a corporation, or the taxpayers dwelling therein, could not in the same way be barred from enforcing whatever equities the village might have growing out of the transaction. The appellee in this case could occupy no better position and have no greater rights than Mr. Schmoldt, the owner of the bonds, would have had in his lifetime. He, Mr. Schmoldt, was entirely familiar with all the transactions between the village and Fisher and helped to organize the corporation which was to carry out the plan devised. In pursuance or in consequence of this plan, he became the owner of the mortgage bonds which he held at the time of his death. In *Evans v. Holman, supra,* where this transaction was under consideration, the Supreme Court stated: "The plan was that the village should acquire an electric light plant at the price of $11,496, issue bonds to the amount of $4,200 (which was the constitutional limit of indebtedness), and afterwards pay $7,296 as the mortgage indebtedness matured or lose the property. It was provided in the contract for the purchase that the village was not to assume or agree to pay the mortgage indebtedness, but it was none the less an indebtedness of the village, since the property purchased was pledged to pay it. It was also there held that the attempt to avoid the constitution in this manner was illegal and the transaction

216    APPELLATE COURTS OF ILLINOIS.

Lewis v. Clay City Electric Light & Power Co., 194 Ill. App. 208.

was void, and that the village might have been enjoined from executing the plan provided for had the complainants in that case chosen to take that course, and the result of the suit was, that the village was enjoined from paying any part of said mortgage indebtedness except such as could be paid from the net income of the electric light plant. By the bill in this case it was sought to deprive the city of the interest it had in the electric light plant and its accessories, thereby causing it to lose the amount it had invested therein, which was the constitutional limit of its indebtedness, and such other sums as it may have paid out for repairs or otherwise since it had been operating the plant. By this means the holders of the mortgage indebtedness would get the benefit either in whole or in part of the transaction which the Supreme Court has declared illegal and void, and there would be accomplished indirectly what could not have been done directly by reason of the illegality of such transaction. There were no equities existing between the bondholders and the village which would give the former any priority of rights over the latter. The village had equities in the property which it had a right to have enforced in case of any sale of the same, and we are of opinion that the court below erred in finding that the claim of the mortgage indebtedness was a prior lien and granting to the holders thereof a foreclosure of the premises, to the exclusion of the rights of the village, and in dismissing the cross-bill for want of equity. The proofs in this case and the holding of the Supreme Court in *Evans v. Holman, supra,* appear to us to establish the fact that the village had an equity in the property of equal validity to that of the holder of the mortgage indebtedness, in the proportion the amount it had expended in creating the plant bore to the amount that had been expended for the same purpose, derived from the sale of the bonds secured by the mortgage indebtedness.

Lewis v. Clay City Electric Light & Power Co., 194 Ill. App. 208.

The cross-bill of the village sought to enforce its rights, and while joining appellant in asking that the plant be sold, it further prayed that the proceeds of sale, after paying the costs and expenses of the suit, should be pro rated between the village and the owners of the mortgage bonds in the proportion the amount of funds each had contributed towards the erection of said plant bears to the total cost of such plant. This was the relief which the village had a right to ask for and should have been granted.

We are of further opinion, however, that in determining the amount due to the village when an accounting shall be taken of the amounts due to the respective parties as named, the village should be charged a reasonable amount for the use of the plant during the time it has operated it for its own benefit. As in our view of the case the original bill must be dismissed and the cross-bill sustained, it will be unnecessary to discuss the question whether appellee T. B. Lewis had such an interest in the mortgage bonds as to entitle him to maintain an action for the foreclosure of the lien securing the same in his own name. The judgment of the court below will be reversed and the cause remanded with instructions to the court below to dismiss the original bill and to grant the relief prayed for by the cross-bill, and to cause an accounting to be taken to determine the amount due the parties in interest as above indicated.

*Reversed and remanded with directions.*