J. A. WADE et al. Appellees, vs. THE EAST SIDE LEVEE AND SANITARY DISTRICT et al.—(THE EAST SIDE CONSTRUCTION COMPANY, Appellant.)

*Opinion filed February 18, 1926—Rehearing denied April 9, 1926.*

1. SANITARY DISTRICTS—*what contracts are illegal as exceeding constitutional limit of indebtedness.* Contracts of a sanitary district for construction work based on unit price bids must come within the constitutional limitation of indebtedness where the estimates and specifications set out in detail the nature of the work, so that the amount of liability created can be ascertained to a reasonable certainty by multiplying each item of estimated quantities by the unit price bid; and such contracts, to the extent that they bring the indebtedness of the district above the constitutional limit, are illegal although they are to be paid in installments and although the district was not indebted up to the constitutional limit at the time the contracts were made.

2. SAME—*contracting company must acquaint itself with financial condition of district—laches.* A contracting company bidding for construction work of a sanitary district on a large scale must acquaint itself with the financial condition of the district, and in defense of a suit by tax-payers to enjoin the work on the ground that the contract was illegal, as creating an indebtedness beyond the constitutional limit, the contracting company cannot charge *laches* of the tax-payers in acquainting themselves with the facts.

3. MUNICIPAL CORPORATIONS—*what indebtedness is prohibited by constitution.* The object of the constitutional provision against any municipality becoming indebted in excess of five per cent of the assessed valuation of property is to protect the property of citizens from being burdened with such excess indebtedness extending into the future; and any plan or scheme which has the effect of creating such a burden is prohibited, no matter how the indebtedness is created.

4. SAME—*when interest is a debt within constitutional limitation—judgments.* Interest is not a debt, within the meaning of the constitutional limitation of the indebtedness of a municipality, until it is earned and becomes due, but interest on a judgment becomes part of the debt, and on any date the total amount of the debt is the judgment plus the accrued interest from the date of the judgment.

5. SAME—*liability on a lease is part of municipal indebtedness.* Liability of a municipal corporation on a lease of premises which it was authorized to hold may properly be included in reckoning the municipal indebtedness within the meaning of the constitutional limitation.

6. SAME—*when contracting company, in estimating indebtedness of corporation, cannot claim illegality of prior obligation.* In a suit to enjoin work under a contract with a municipal corporation on the ground that the constitutional limit of indebtedness had been reached, the contracting company cannot maintain that certain prior obligations of the corporation cannot be considered a valid indebtedness because not let by public bids, where the obligations were in existence and unquestioned when the contract in question was entered into and were ultimately paid.

7. SAME—*when contract on cost-plus basis is illegal as exceeding limit of indebtedness.* Any contract or contemplated improvement which may be furthered on a cost-plus basis is illegal and unauthorized if at the time of making such contract it can be reasonably foretold that the total cost of such improvement will itself exceed, or will, with the legitimate indebtedness already existing, exceed, the constitutional limit of indebtedness of the municipality.

8. SAME—*when cost-plus contract cannot be included as liability in estimating municipal indebtedness.* A verbal contract entered into by a sanitary district on the cost-plus basis cannot be considered in estimating the indebtedness of the district on a certain date so as to include as part of the indebtedness sums paid to the contractor for work done after said date, where most of the work was performed and paid for prior to the date in question, and where there was no estimate of cost, approximate price or agreed sum stated nor any quantities specified when the contract was made.

9. SAME—*cash in the treasury and taxes cannot be considered in estimating municipal indebtedness.* Cash in the treasury of a municipality and taxes levied cannot be considered as a credit or deduction against municipal indebtedness in determining whether a particular contract has increased the indebtedness beyond the constitutional limit, as the question is not one of insolvency but solely one of indebtedness.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

KRAMER, KRAMER & CAMPBELL, for appellant.

PRESTON K. JOHNSON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The East Side Levee and Sanitary District (hereafter referred to as the district) is a municipal corporation organized in 1909 under authority of an act of the legislature relative to the creation of sanitary districts comprising lands situated in two counties, approved May 17, 1907. (Smith's Stat. 1925, chap. 42, p. 1058.) The district contains lands near the Mississippi river and located in Madison and St. Clair counties. Prior to and during the year 1920 the district had carried on a large amount of work for sanitary purposes and had become extensively obligated by the issuance of bonds and by other forms of indebtedness. In May, 1920, the board of trustees of the district passed an ordinance providing in detail for the construction of sections 1, 2 and 3 of an improvement known as its Project 12. This work was to consist generally of a large ditch about ten miles long, with a bottom width of fifty feet and a levee on each side, for the purpose of draining the waters coming from the bluffs upon the low lands surrounding East St. Louis, directly into the Mississippi river. Detailed plans and specifications for the work were prepared by the district's engineer and these were filed with the district board. Sealed bids were received on a certain date pursuant to an advertised call therefor, and the bidders were required to bid unit prices in accordance with the engineer's estimate of each item or quantity and not a definite lump sum for the work. Each contractor submitting a proposal was required to present therewith his certified check for five per cent of his total bid. The trustees of the district on August 7, 1920, awarded to A. V. Wills & Sons and H. J. Sternberg, a contracting firm, the contracts for the work in sections 1 and 2 and reserved the right to let the work in section 3 at a later time. On the same date two contracts, one for each improvement in sections 1 and 2, were entered into between the contracting firm and the district, and contractor's bonds

were given in each instance. The contracts provided for payments to be made on monthly estimates prepared by the district's engineer as the work progressed,—ninety per cent of such estimates to be paid to the contractor and ten per cent thereof retained until the completion of the work and its acceptance by the district. The estimated quantities of excavation and levee work were given in detail for the improvements contemplated in each of said sections. After the letting of these contracts the contracting firm proceeded to operate under the terms of the two agreements, and at the time of the commencement of this litigation that firm or its successor had performed, as stated in appellant's brief, approximately sixty per cent of the work to be done in section 1 and forty per cent of the work under the improvement contract in section 2. It appears that in April, 1923, the East Side Construction Company, with the consent of the district, took over from A. V. Wills & Sons and H. J. Sternberg, the original contracting firm, the two contracts here involved and continued thereafter to perform the work under those contracts. It also appears that during October, 1921, the board of trustees of the district passed an ordinance providing for the abandonment of the work in Project 12 and the repeal of the ordinance authorizing that improvement. This ordinance, however, was vetoed by the president of the board of trustees. It further appears that there were two different suits commenced during the summer of 1923 by the city of East St. Louis seeking to enjoin the district and contracting firm from proceeding further under the two contracts. In February, 1924, the record shows the books and accounts of the district were examined by a certified public accountant for the purpose of ascertaining the financial condition of the district, particularly as to its status on the date the two contracts here in question were entered into.

The original bill in this case was filed in April, 1924, by some ninety residents and tax-payers of the sanitary district,

and an amended bill was filed in June, 1924, whereby it was sought to enjoin further work and expenditure of money under the two contracts entered into on August 7, 1920, for the reason that the sanitary district had become indebted to an amount in excess of five per cent of the value of the taxable property therein as ascertained by the last assessment previous to the incurring of such indebtedness. The amended bill alleged, among other things, that on August 7, 1920, the district was indebted to the amount of $2,010,-194.84, and set out under twenty separate and distinct items the respective amounts aggregating the sum total mentioned; that the total assessed valuation of the district on that date was $40,597,383.11; that five per cent thereof was the sum of $2,029,869.16, and therefore the district could not legally contract additional indebtedness in excess of $19,674.32; that nevertheless the two contracts for work in sections 1 and 2 of Project 12 were entered into, whereby the district agreed to pay for the performance of the work in section 1 the sum of $552,165 and the sum of $367,630 in section 2; that within two months after the contracts were made the district paid out under said contracts more than $19,674.32, (the legal excess permissible,) and has since paid out $500,-000 for work under said contracts, and that the district will unlawfully expend $450,000 additional for the completion of the work unless restrained and enjoined from so doing.

The district and the East Side Construction Company filed separate answers, denying most of the material allegations of the bill relative to the items of indebtedness, and alleging that the district had full power to enter into said agreement, and by so doing did not become indebted for a sum in excess of the five per cent limit within the meaning of the constitution; that large sums of money had been paid by the district to various parties for lands, right of way for the improvement, construction of bridges, etc.; that if the work under the contracts were prevented great loss would result to the contractor for equipment purchased and

money expended preparatory to the completion of the two contracts, and that all money spent would be wasted and lost to the tax-payers of the district, because the ditches would be useless if left in an unfinished condition. The answers also alleged work had progressed under the two contracts for about three and one-half years, and that complainants were guilty of delay and *laches* in asserting their rights, if any such ever existed.

The prayer of the bill was, in substance, that the indebtedness of the district on August 7, 1920, be ascertained; that the two contracts of that date be declared illegal and void in so far as they purported to bind the district to expend money and incur obligations in excess of the five per cent limit provided by law, and that further work or expenditure of money under the two contracts be perpetually enjoined. The pleadings are lengthy and we have only attempted to set out the substance of their contents. A stipulation was also filed by counsel for the parties, setting out some facts concerning the bonded indebtedness of the district, interest, dates thereof, tax money collected and received during 1920 after August 7, amounting to $155,-044.92, cash in the treasury on said date amounting to $185,943.68, and the assessed valuation of the district. The cause was heard by the court on oral and documentary evidence submitted, and a decree was entered finding that the district was on August 7, 1920, indebted to the amount of $1,925,195.34; that the district could then incur a legal indebtedness of $104,673.82; that the contracts for sections 1 and 2 incurred an indebtedness of $552,165 and $367,630, respectively; that the district had paid the contractor under the two contracts $529,416.23, and that all amounts paid in excess of $104,673.82 were illegal. The decree found the contracts void and illegal at all times in so far as obligating the district in any sum in excess of the last amount mentioned, and enjoined further work or expenditure of money under the contracts. A joint and several appeal

320—26

was allowed, and the East Side Construction Company has prosecuted an appeal to this court.

It was conceded by counsel for appellees, and the decree found, that the district was not indebted in excess of the constitutional limit at the time of the execution of the two improvement contracts here involved.

It is contended by appellant that the two contracts are so uncertain and indefinite as not to create a fixed indebtedness within the meaning of section 12 of article 9 of the constitution, in that there is no certain and specific amount of dirt to be moved and no specific sum is agreed to be paid except a certain amount per cubic yard. The case of *City of Chicago* v. *Galpin,* 183 Ill. 399, is relied upon in support of that contention. The court was there considering a bill to enjoin the city officials from paying any money under two contracts for gasoline lights entered into by the city in 1897 with a certain company, whereby the latter was to furnish to the city each night over a period of one year, with privilege of a renewal or extension of time, 2800, more or less, and 7000, more or less, lighted lamps, at the rate of $11.48 per lamp lighted per annum, payment therefor to be made monthly. The city had at the time reached its constitutional limit of indebtedness, and the court said the city becoming liable for any amount in the future, whether that amount was definitely ascertained at the date of the contract or not, would be incurring an indebtedness in some manner for some purpose in excess of the constitutional inhibition. The court held the contracts were sufficiently definite and certain and fixed the city's liability from the dates of the contracts. The decree of the superior court perpetually enjoining the officials from carrying out the terms of the contracts was affirmed. The language relied upon by appellant appears on page 407 of the opinion, and is as follows: "Suppose in this case the city had not yet reached the limit of indebtedness but the complainants had contended that the liability created by these con-

tracts would carry it beyond that limit. In that case, if the contracts left the amount uncertain and undetermined, the conclusive answer to the contention would be, whether or not the amount, when ascertained, added to the indebtedness already incurred, will exceed the constitutional limit cannot be ascertained until the end of the month, when the lamps lighted and maintained are counted. We are inclined to the view that if the contracts, properly construed, do not fix the amount of the liability from their dates they should not be held to create an indebtedness within the meaning of the constitution. If it be said some indebtedness would arise though the amount is undetermined, the answer would be, a fixed sum is as necessary to the creation of an indebtedness by contract, in the common acceptation of the term 'indebtedness,' as other requisites of the contract. A debt, or 'indebtedness,' means a determinate and definite liability." It will be noted that the language used by the court was in answer to a mere supposition presented in the opinion. The discussion of this supposition was not necessary to the decision reached in that case, because it appears the city was already indebted beyond the constitutional limit. Hence we do not think that case is authority for the proposition advanced by appellant.

Under the decisions of this court an agreement by a municipality to pay annually a certain price per light for a specified number of street lights for a period of thirty years constitutes an indebtedness for the whole amount. (*Evans* v. *Holman*, 244 Ill. 596.) In the case at bar the contract papers, consisting of the advertisement, specifications, proposals, contracts and bonds, set out in particular and specific detail the nature of the work and the estimated quantities of materials involved. The total amount of the bids was obtained by multiplying each item of estimated quantity given by the unit price bid thereon. The five per cent certified check required to be presented with the bid was based on such computation. From the complete engineer-

ing data at hand, the amount of different work involved could be ascertained to a reasonable certainty. The contracting firm obligates itself, under the terms of the construction contracts, to do all the work specified therein, and payment may be enforced for the work performed. The contracts created a sufficiently definite and fixed liability within the meaning of the constitutional provision. To hold otherwise, a municipality could embark in improvement enterprises without any limit whatsoever and in defiance of the constitutional inhibition, provided the several quantities of work contemplated were based on estimates, and unit prices, only, were received upon the respective estimated quantities.

It is also contended by appellant that these contracts (where the consideration is paid from month to month as the work progresses or is payable in installments, and where, as here, the municipality was not indebted up to the constitutional limit at the time the contracts were made,) can not be included as a debt within the constitutional limitation. Appellant cites *City of East St. Louis v. East St. Louis Gas Light and Coke Co.* 98 Ill. 415, *City of Carlyle v. Carlyle Water, Light and Power Co.* 140 id. 445, and *City of Chicago v. Galpin, supra.* The last case cited is not an authority for the proposition stated, and the first two cases were criticised in *City of Chicago v. McDonald,* 176 Ill. 404, and such criticism again referred to the *Galpin case.* If the two contracts here in question may be termed installment contracts, we think the language of the opinions in several cases where that situation was discussed somewhat, warrants the conclusion that this court is committed to the view to be applied here, that a present indebtedness was incurred by this municipality when it entered into the two contracts and assumed liability thereunder. *City of Chicago v. Galpin, supra; City of Chicago v. McDonald, supra; Schnell v. City of Rock Island,* 232 Ill. 89; *Evans v. Holman, supra; Lobdell v. City of Chicago,* 227 Ill. 218.

In the case of *Culbertson* v. *City of Fulton,* 127 Ill. 30, the city entered into a contract in 1887 for the construction of a waterworks system, which was to be completed within ninety days. The city was not indebted in any amount when the agreement in question was executed. The contract provided for the payment of $11,619, one-half of which was to be paid when certain parts of the work were performed and the balance when the whole system was completed and accepted. The price was $1165.95 in excess of the constitutional debt limitation; $10,000 was to be paid by issuing bonds, and the city levied a tax for $1700 for the completion of the payment of the contract price. On a bill to enjoin the collection of the tax this court held that the city became indebted by entering into the contract; that the indebtedness within the limitation was valid but the indebtedness in excess of the constitutional provision was void; that of the $1700 levied the sum of $1165.95 was an illegal indebtedness, and that a tax could not be levied to pay a debt forbidden by section 12 of article 9 of the constitution. In the opinion the court said: "By entering into the contract on August 15, 1887, the city 'became indebted.' The obligations entered into by the terms of the contract constituted such an indebtedness as is contemplated by the language of the constitution. It cannot be said that the indebtedness did not come into being until the work was completed and accepted by the city. The city bound itself to pay for the work when it should be completed, and could be compelled to do so if the work should be done according to the contract. We said in *City of Springfield* v. *Edwards,* 84 Ill. 626: 'A debt payable in the future is, obviously, no less a debt than if payable presently; and a debt payable upon a contingency, such as the rendering of some service or the delivery of property, etc., is some kind of a debt and therefore within the prohibition. If a contract or undertaking contemplates, in any contingency, a liability to pay, when the contingency occurs the liability is absolute,—the

debt exists,—and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred.' " That case has been cited with approval in *City of Chicago* v. *McDonald, supra, Lobdell* v. *City of Chicago, supra,* and *Baltimore and Ohio Southwestern Railroad Co.* v. *People,* 200 Ill. 541. The latter case is also an authority upon the same proposition. The prohibition of the constitution is against voluntarily incurring an indebtedness in any manner or for any purpose, and it makes no difference under what guise the attempt is made or what form the proceeding takes. The object is to protect the property of citizens from being burdened beyond five per cent of its value, as ascertained by the assessment for State and county taxes, with any indebtedness extending into the future, and any plan or scheme which has the effect of creating such a burden is prohibited by the constitution. *People* v. *Chicago and Alton Railroad Co.* 253 Ill. 191.

Appellant contends appellees are guilty of *laches* because they did not attempt to obtain relief before a large part of the work was performed and before any damage would have resulted to anyone. The record warrants the conclusion that the financial condition of the district was not known to the tax-payers until an audit was made by an expert accountant for them. The contractor has been paid for all work done to date except certain retained percentages, and most expenditures by the contractor for supplies were made about the time of commencing the work. The contractor was in no worse position at the time suit was instituted than it was a few months after commencing work. If these contracts were illegal it is through no fault of the tax-payers, and it was the duty of the contracting company to acquaint itself with the financial condition of the district with which it was negotiating for work on such a large scale. Moreover, the original contracting firm, some of whose members at least are officers of or interested in the appellant company, for several years had business relations with

the district and could have ascertained its status. We think there is no merit in this contention.

Having determined that the two contracts created an indebtedness by the municipality to be taken into account within the meaning of the constitutional provision, in the sum of $552,165 and $367,630, respectively, and totaling $919,795, it is necessary to discuss briefly the amount of indebtedness existing against the district on August 7, 1920, the day the contracts were executed. The circuit court found the indebtedness on that date to be $1,925,195.34, which is somewhat different from that alleged in the amended bill. The only information we have disclosing the calculation made by the court in arriving at his conclusion is the statement shown on pages 7 and 8 of appellees' brief.

Item 1 shows the bonded indebtedness of the district amounted to $1,300,000, and it is agreed this sum should be taken into consideration in determining the municipal indebtedness.

Item 2 ($15,246.17) is accumulated interest on $700,-000 of the bonds in item 1 from March 1, 1920, to August 7, 1920. Item 3 ($15,682.19) is accumulated interest on $600,000 of said bonds from March 1, to August 7, 1920. The interest shown by these two items was not due and payable until September 1, 1920. Interest is not a debt within the meaning of the constitution until it is earned and becomes due. (*Goodwine* v. *County of Vermilion,* 271 Ill. 126, and authorities there cited.) Items 2 and 3 should not have been included.

Item 4 represents $74,800 in bonds of Drainage District No. 1 outstanding on August 7, 1920. The sanitary district about 1916, on account of the overlapping of improvement work, took over all the improvements of said drainage district, paid $15,000 in cash therefor at the time, and by contract agreed to levy taxes and pay the district's outstanding bonds in amount of over $227,000. This agreement had been kept and performed and maturing bonds paid

from year to year by the sanitary district until a balance was left in the amount stated. This item was properly included as an indebtedness. *Evans* v. *Holman, supra.*

Item 5 is a judgment for $94,918.89 obtained against the district on August 6, 1919, by the Illinois Dredging and Construction Company. By stipulation this item was counted as a proper indebtedness.

Item 6 ($4745.94) is interest at five per cent on the foregoing judgment from its date. The interest on a judgment becomes part of the debt, and on any date the total amount of the debt is the judgment plus the accrued interest thereon. This item was correctly included as an indebtedness.

Item 7 is a condemnation judgment in favor of the Missouri Pacific Railroad Company, as successor of the St. Louis, Iron Mountain and Southern Railroad Company. The judgment was for $75,903, and involved crossing the railroad right of way and the construction of a steel bridge across the canal in Project 8. On appeal to this court it was affirmed. Thereafter, in July, 1918, the sanitary district and railroad company entered into a written contract concerning matters arising under the condemnation proceeding whereby both parties were to be benefited, and the company was to allow a credit of $2500 on the judgment for work to be done by the district in a certain manner at the point of the railroad bridge. Under the terms of the agreement the railroad company was to raise its grade and tracks and construct a temporary timber bridge at the expense of the district. The railroad company was to use such temporary bridge for its life, not to exceed ten years, and during that period of use no interest was to be charged on the judgment, which was to remain in full force and effect. The work to be done by the district upon which the $2500 credit was to be allowed was performed by A. V. Wills & Sons, contractor for the district, and on August 7, 1920, the trustees authorized a payment of $5000 to be made to said contractor for the completed work. The judgment,

less the credit, making a total of $73,403, was a proper item to be included as indebtedness.

Item 8 was originally shown in the amended bill as interest on the foregoing judgment but under the agreement no interest was to be charged, and it was not shown or counted as an indebtedness.

Item 9 is a condemnation judgment for $53,280 in favor of the East St. Louis and Carondelet Railroad Company, and involved a certain elevation of railroad embankment and construction of a steel bridge over the canal in Project 8, etc.  An agreement was entered into in this instance during March, 1918, between the district and the railroad company concerning matters involved in the condemnation proceedings, whereby $31,580 of the judgment, for certain work to be done by the railroad company, was to be paid by December, 1917, and the balance ($21,700) was to be paid by July 1, 1921.  The amount of $31,580, and interest thereon, was paid in May, 1920, and the canal across the railroad right of way in Project 8 was later constructed. We think the balance of the judgment, ($21,700,) as shown by the contract, should have been included, as it was.

Item 10 is shown in the bill as interest on the judgment mentioned in item 9, but on account of the agreement whereby the balance of the judgment was not to be paid till 1921, and without interest, this item was not proven or considered.

Item 11 is a condemnation judgment of $23,290 in favor of the Alton and Southern Railroad for canal right of way across the railroad in the district's Project 11.  After an appeal to this court and a second trial had, a judgment was entered by the county court of Madison county for the same amount, and in the final order an agreement was recited between the railroad company and the district.  Under the terms thereof the railroad company received $9290 from the court, to which the judgment was apparently paid pending the appeal, and was to use for not to exceed ten years a pile trestle already constructed across the canal instead

of immediately constructing a steel and concrete bridge, and the remainder of the judgment ($14,000) was returned to the district and was not to bear interest or be paid until construction of the steel bridge was commenced. The balance of this judgment in amount of $14,000, under the agreement, was properly counted as an indebtedness.

Item 12, as alleged, is an interest charge on the foregoing judgment in item 11, but due to the nature of the judgment and agreement, whereby no interest was to be charged, it was not proven or considered.

Item 13 is the rental to accrue under a written lease for offices of the district for a period of eleven years from July 1, 1920. The rental for the unexpired portion of the lease amounted to $19,000. The rental was to be paid monthly, as specified. Section 26 of the law governing sanitary districts of this kind provides that the board of trustees shall have and maintain an office at some convenient place within the district, where all the records and affairs of the corporation shall be open to inspection by any taxpayer at any reasonable time. Section 6 authorizes the district to acquire and hold real estate for corporate purposes. It chose to acquire rooms for its offices by lease rather than by purchase or the erection of a building. The lease was within the power of the corporation and was a valid contract, and under the decision in *Evans* v. *Holman, supra,* was an obligation of the district and was properly included in reckoning the municipal indebtedness.

Item 14 is a contractual obligation with A. V. Wills & Sons for construction work in Project 8. The contract was let in 1916 and not finished on August 7, 1920. It was shown that the contractor was paid the sum of $94,-799.71 after August 7, 1920, for the completion of the work under the provisions of the contract. This contract, generally speaking, was for channel or canal excavation and levee work, where estimates of amounts or quantities were specified and unit prices were bid thereon. It is contended by

appellant that no one could tell on August 7, 1920, what amount was or would be due under the contract. The same contention is made as to this contract,—that there is no fixed amount of dirt to be moved and no specific and definite sum agreed to be paid the contractor,—as was made to the two main contracts involved in this case. What we have said relative to those two contracts also applies to the contract under this particular item. It may be enlightening to state that the total amount of the contractor's bid under this item was computed by multiplying the estimated quantities given by the unit prices bid, and found to total $217,262.50. The total amount paid the contractor after the work was completed was $216,720.19, or $542.31 less than its total bid. The balance for which the district had obligated itself under the construction agreement was properly included as an indebtedness in amount of $94,799.71.

Item 15 covers an amount of $77,503.85 as included in the decree. This item has to do with another unfinished improvement, known as Project 11, and consisted mainly of the excavation of a sixty-foot channel four miles long and certain clearing. The contract therefor was on estimated quantities and unit price bids, and was entered into with A. V. Wills & Sons and H. J. Sternberg in June, 1918. It was shown the unfinished portion of this contract, based upon actual payments made for work done under the terms of the agreement, was $37,987.22. Also included herewith are three items, totaling $12,120.28, for materials and labor contracted for during the spring months in 1920, which were later supplied and paid for by the district: to the East St. Louis Light and Power Company for power line and transformer, to the Farrar Pump and Machinery Company for two complete pumping units and connections, and to Schuermann Bros. for shaping up certain levees. Appellant says none of these last three items were legal debts because each was in excess of $500, and the contracts therefor were not let by public bids, as required by section 23

of the statute governing such sanitary districts. The order of the board of trustees, before obtaining the materials or having work performed, was in each instance recited to be an emergency, and the accounts were all paid by the district. Besides, such a defense of illegality in the nature of a collateral attack should not be permitted to these items of indebtedness under the circumstances shown. It is evident some sum should have been deducted from the Schuermann payments, shown in the amount of $3660.16. It is admitted in appellees' brief that this was work to be done on a cost-plus fifteen per cent basis. Work began in May, 1920, and ended in November, 1920. Only such work as was performed up to August 7, 1920, could be counted as an existing indebtedness. However, from the proof we are unable to state definitely what the figure would be, and approximating the deduction would make no difference in the final result of this litigation. The sum of $37,987.22, plus $12,120.28, totaling $50,107.50, was a proper amount to be considered as indebtedness. The difference in the amount included in the decree under this item, which was $77,-503.85, was caused by certain extra work in the Wills contract being inadvertently included in the estimates showing payments made to the contractor, and is so conceded by appellees.

Item 16, $7535.40 for the completion of a pile bridge, is conceded to have been properly considered as a debt of the district.

Item 17 was $5000 for work done at the Missouri Pacific railroad crossing, mentioned herein under item 7, by A. V. Wills & Sons. On August 7, 1920, the board of trustees found the work had been done and ordered payment made therefor. This item was properly included.

Item 18 ($9565.85) pertains to work ordered done by the district board on the Lansdowne ditch improvement and for certain right of way therefor. The engineer was on March 3, 1920, by an order of the board reciting an emer-

gency existed, authorized to proceed, and a right of way therefor was ordered to be procured. The work was ordered done by A. V. Wills & Sons on a yardage basis previously agreed upon, and negotiations were had for the two pieces of right of way before the date here in question. Under the situation presented, as we understand it, these obligations were such as were properly included as a debt in the amount stated.

Item 19 ($24,685.70) represents payments made to the John Keeley Company for work performed after August 7, 1920, under a verbal contract made by the district engineer in December, 1918, for re-dredging eight miles of canal in Drainage District No. 1. Appellees showed by the proceedings of the board in August, 1918, that the district's engineer recommended re-digging and cleaning out drainage canal No. 1, and, after reciting an emergency existed, the board ordered and authorized the engineer to purchase materials and employ necessary labor to carry out the work as soon as possible. It is admitted that this contract was a verbal one, that most of the work had been completed before August 7, 1920, and that payment therefor was to be for the actual cost of the work to the contractor plus fifteen per cent for supervision. No estimate of cost, approximate price or agreed sum was stated, nor were any quantities given. If this verbal agreement was a valid contract, we are unable to see how, without an estimate of quantities being given or price stated, an indebtedness, except for work already done, could be figured on such a cost-plus contract. What was the indebtedness created as a future obligation under such a contract on August 7, 1920, and who could figure the amount without some data thereon? As previously stated, this agreement was entered into in December, 1918, and it may be that at that time the necessary re-dredging of the entire eight miles of canal would have been a lawful expenditure within the constitutional limitation of indebtedness. We have no tabulated

data before us as to the financial condition of the district on that date.  We know of no way whereby the total expense of an improvement, or any other piece of work, can be made reasonably certain on a cost-plus basis contract unless there be some estimate or engineering data previously given or agreed upon.  However, we are of opinion that any contract or contemplated improvement which may be furthered on a cost-plus basis would be clearly illegal and unauthorized if at the time of making such an arrangement for the accomplishment of the improvement it can be reasonably approximated or foretold that the total cost of such improvement would itself exceed, or would with the legitimate indebtedness already existing exceed, the constitutional debt limit of the municipality.  The purpose of the constitutional provision is to make it impossible to place a burden upon the property of citizens in excess of five per cent of its value, and any scheme, plan or device used for such purpose is prohibited, and therefore illegal.  In this instance we are of opinion, under the proof presented, this item should not have been included as an indebtedness of the district on said date.

Item 20 is $72,608.64 paid to A. V. Wills & Sons, after the date in question, for work performed thereafter on auxiliary No. 1 of Project 8.  This excavation work was contracted for in December, 1919, in the usual method, after calling for bids, and under specifications, estimates, engineering data and bond similar to the two main contracts discussed herein.  What we have said as to those contracts is applicable to this item.  The amount for the unfinished work was properly included as an indebtedness.

The stipulation filed herein shows cash in the treasury in the amount of $185,943.68, and taxes were received from August 7, 1920, to December 31, 1920, in the sum of $155,044.92.  The sum of $300,000 of the outstanding bond issue shown under item 1 was due on September 1, 1920, and was paid on that date, the money used therefor, so ap-

pellant states, having been specifically levied and appropriated for that particular purpose by the district tax levy
ordinance of 1919.   It is contended by appellant that the
district should receive credit for the $300,000 collected and
applied to the specific purpose mentioned.   Appellant's calculation shows the district's indebtedness is $1,180,857.29,
leaving a legal limit of additional indebtedness in amount
sufficient to pay for the contract in section 1, and all but
approximately $2000 under section 2.   In the case of *City
of Chicago* v. *McDonald, supra,* this court, in considering
the question of applying cash in the treasury of a municipality and taxes levied as a credit or deduction against
municipal indebtedness, adopted the following language,
which we think applicable to this case:   "Upon what principle it is contended that an outstanding debt is not a debt
by reason of some cash in the public treasury it is difficult
to perceive.   As long as the cash is not applied to the payment of the debt the debt must remain.   Nor can it be
perceived upon what principle uncollected taxes in course
of collection can be held to reduce the floating debt until they are actually collected and applied to its reduction.
*   *   *   The question is not one of insolvency but solely
one of indebtedness."

A recapitulation of the figures set out in the several
items herein discussed shows the indebtedness of the district is $1,842,184.93.   The legal limit of indebtedness,
based on five per cent of the value of the taxable property
in the district, was $2,029,869.16.   The difference between
these two amounts is $187,684.23, which is the sum for
which the district could legally have contracted additional
indebtedness.

The corrected figures submitted by appellees show the
sum of $518,836.23 to have been paid out under the two
contracts in question prior to the commencement of this
litigation, all of which in excess of $187,684.23 was in our
opinion wrongful and illegal.   There are some discrepancies

in figures appearing in the briefs and abstract of counsel, but whatever discrepancies appear therein or may from that cause be incorrectly stated in this opinion do not affect the ultimate result of the litigation. A revision of the figures given in the decree showing the indebtedness of the district and the limit of additional indebtedness permissible at the time of the execution of the two improvement contracts in Project 12 should be made, though these alterations do not materially affect the result. Otherwise the decree of the circuit court is affirmed.

The decree is reversed in part and the cause remanded to the circuit court, with instructions to revise the decree in accordance with the views herein expressed.

*Reversed in part and remanded, with directions.*