(No. 26729.—

THE PEOPLE *ex rel.* A. H. Greening, State's Attorney, Appellant, *vs.* DWIGHT H. GREEN *et al.*, Appellees.

*Opinion filed March 16, 1943.*

A. H. GREENING, State's Attorney, (THOMAS W. HOOPES, of counsel,) for appellant.

GEORGE F. BARRETT, Attorney General, (ALBERT E. HALLETT, of counsel,) for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an action of *quo warranto,* brought by the People of the State of Illinois, on the relation of the State's Attorney of Sangamon county, under the authority and provisions of paragraphs 9 and 10, chapter 112, Illinois Revised Statutes 1941.

The complaint filed in the trial court alleged that the several defendants unlawfully pretend and claim to be members and officers of a corporation, under the name and style of "Illinois State Public Building Authority," and are attempting unlawfully to function as a corporation and exercise privileges, as such, without being legally incorporated. The defendants filed a joint answer, in which they admitted the alleged activities on their part and plead, as their sole justification, the provisions of an act of the Sixty-second General Assembly, entitled, "An Act to create an Illinois State Public Building Authority for cities, villages and incorporated towns of 75,000 or more inhabitants and to define the powers and duties thereof," approved June 28, 1941. The plaintiff filed a motion to strike the defendants' answer and for a judgment of ouster on the

ground that the act relied upon by the defendants, as authorizing their actions, is unconstitutional.

Both parties have adopted the following state of facts: The act of the General Assembly referred to appears as paragraphs 201-213, chapter 127, Illinois Revised Statutes 1941. The act provides, in substance, that the Governor, Lieutenant Governor, State Treasurer, Auditor of Public Accounts, Secretary of State, Superintendent of Public Instruction and Attorney General of the State of Illinois, together with a member of the Supreme Court, or a citizen appointed by the Supreme Court, and a member appointed by the Governor, are created a "body corporate and politic, constituting a public corporation and government instrumentality" designated the Illinois State Public Building Authority. It is further provided that the Governor shall be *ex officio* president, the Secretary of State *ex officio* secretary, the State Treasurer *ex officio* treasurer, the Auditor of Public Accounts *ex officio* auditor, and the Attorney General *ex officio* attorney of the Authority. The act requires that each member of the Authority, before entering upon the duties of his office, shall take and subscribe an oath to faithfully discharge the same. The treasurer is required to give bond in the amount of $10,000 for each 50,000 square feet of floor space owned by the Authority.

The powers of the Authority are to be exercised by a governing body consisting of the members heretofore mentioned. The act provides that within thirty days after the effective date thereof the Authority shall meet, organize and prepare its bylaws, rules and regulations. Seven members of the Authority are to constitute a quorum for the purpose of organizing the Authority and thereafter conducting its business. A majority of a quorum is necessary to any action taken by the Authority.

The Authority is authorized to purchase, construct, alter, repair, maintain and operate buildings suitable for

the office needs of the State in municipalities of 75,000 or more inhabitants. It is invested with the function of determining the need of a State office building in any such municipality and is given the power, subject to the approval of the Governor, to issue bonds to finance the cost of acquiring, constructing, altering, repairing, maintaining or operating such buildings in the amount of $12,000,000. It is provided that "such bonds shall be payable solely from the income derived from the operation of the building, or buildings, and shall not constitute an indebtedness of the Authority, or the State of Illinois, payable in any other manner." The Authority is authorized to lease such buildings for office space to the several branches of the State government and to lease to others space not needed for State offices.

The Authority is authorized to contract and be contracted with, to appoint officers, agents and employees and fix their duties and compensation, to have and use a common seal, to exercise the power of eminent domain, and to enter into leases, contracts and agreements with any agency of the Federal government. It is provided that the authority shall have no power to levy taxes or to pledge any of its property, other than money derived from income, for the payment of any debts. The ownership of buildings acquired by the Authority is to vest exclusively in the Authority, free from any legal or equitable interest in anyone else. The act provides that all rentals collected by the Authority shall be deposited by the Treasurer in the banks authorized to act as depositories for funds of the municipality wherein any property of the Authority is located. The income from rentals is reserved, first, to pay the expenses of the Authority in operating the buildings, second, to establish a reserve to cover estimated expenses for two months' operating cost, third, to pay interest on bonds and, fourth, to retire bonds. All property belonging to the Authority is exempt from taxation. Every

branch of the State government which rents office space in any of the municipalities referred to may contract with the Authority for such space as it may need, such lease to be made upon the same conditions as now provided by the law governing leases by the State departments. The holders of bonds issued by the Authority are given the right to require the Authority, by *mandamus,* to rent the buildings and collect rentals and other charges adequate to carry out any agreement with respect to the revenues of the Authority, and to require the Authority to carry out agreements for the benefit of such bondholders and to perform its duties under the Act. Officers, departments, divisions, boards and commissions of the State government having lands not needed for State purposes may, with the approval of the Governor, convey or lease the same to the Authority, with or without consideration.

·The trial court overruled the motion of plaintiff-appellant to strike the answer of defendants and appellant elected to stand by said motion, whereupon the trial court entered an order .requiring the plaintiff-appellant to reply to the answer of the defendants. The plaintiff refused to plead further, whereupon the court entered its order dismissing the complaint and entering judgment for the defendants, from which order this appeal is taken.

Twelve separate grounds have been urged by appellant upon which the People rely to establish the unconstitutionality of the act in question.

It is first contended that the Illinois State Public Building Authority Act violates section 13 of article IV of the constitution of 1870, in that the subject matter thereof is not germane to or within the scope of the title of the act. The full title of the act reads: "An Act to create an Illinois State Public Building Authority for cities, villages and incorporated towns of 75,000 or more inhabitants and to define the powers and duties thereof." Said section 13 of article IV provides in part, "No act hereafter passed

shall embrace more than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." The criticism directed to this title is that the provisions of the act under consideration are wholly foreign and unrelated to the title; that the body of the enactment creates a Building Authority for the State of Illinois, and not for cities, villages and incorporated towns. While we think the title might have been so stated as to better inform the people and the legislature of the subject matter thereof, we do not believe it is so misleading as to come within the constitutional prohibition. In *Reif* v. *Barrett,* 355 Ill. 104, this court, in passing upon the validity of the Retailers' Occupation Tax Act, wherein this same objection was made, said, at page 124, "however, it is not intended by this constitutional provision that the title of the act shall go into all the details of the proposed law, neither shall it be a table of its contents, but it is sufficient if the title correctly gives the subject matter of the act explicitly and clearly, so as to inform the members of the General Assembly and the public of the subject dealt with and matters inter-related with the subject." In *Lasdon* v. *Hallihan,* 377 Ill. 187, it was stated, "An act having a single general subject expressed in the title may contain many provisions however diverse, if they are not inconsistent with or foreign to the subject. * * * The tendency is to construe this constitutional provision liberally and not strictly."

It is next contended that the act, in designating certain State officials as members of the Authority, is contrary to section 5 of article V of the constitution, which provides that State officers are ineligible to any other office during the term to which they have been elected. This section provides "neither the Governor, Lieutenant Governor, Au-

ditor of Public Accounts, Secretary of State, Superintendent of Public Instruction nor Attorney General shall be eligible to any other office during the period for which he shall have been elected."

Section 3 of the act under consideration says that the Governor, etc., "are hereby created a body corporate and politic constituting a public corporation and government instrumentality by the name of The Illinois State Public Building Authority. The said members of the Authority, as aforesaid, shall be entitled to no compensation for their services as members of the said Authority, but shall be entitled to reimbursement for all necessary expenses incurred in connection with the performance of their duties as such members of said Authority." Section 4 of the act says that the Governor shall be *ex officio* president of the Authority, the Secretary of State shall be *ex officio* secretary of the Authority, the State Treasurer shall be *ex officio* treasurer of the Authority, the Auditor of Public Accounts shall be *ex officio* auditor of the Authority and the Attorney General shall be *ex officio* attorney for the Authority. Under section 3, these various State officers are not made *ex officio* members of the Authority but are in fact made members of the Authority, while under section 4, the various members are made *ex officio* officers of the Authority.

It is interesting to note that section 6 of the act provides that no bonds shall be issued by the Authority except on the written approval of the Governor, while section 4 of the act provides that seven members of the Authority shall constitute a quorum and that all action taken by a majority of a quorum shall be binding upon the Authority. Certainly, in the light of these provisions, some question arises as to whether the Governor is holding more than one office when he acts as a member of the Authority, *ex officio* president of the Authority, takes an oath of office as a member of the Authority in addition to his oath of

office as Governor, and is given the right to, as Governor, hold up or veto the action of the Authority in the issuance of any bonds by it. These manifold duties placed upon the chief executive of the State are at least confusing, if not ambiguous, but not of such a serious nature as to invalidate the act.

The third point urged by appellant is that the Illinois Supreme Court cannot appoint one of its members or some citizen as a member of the Authority, because article III of the constitution has divided the powers of government into three distinct departments and has provided that no department shall exercise any power properly belonging to either of the other departments, except as provided by the constitution. We do not consider this objection serious, because ever since the case of *People ex rel. Dunham* v. *Morgan,* 90 Ill. 558, this court has approved legislation providing for the appointment, by the courts, of commissioners and members of State boards. *People* v. *Evans, 247* Ill. 547; *People ex rel. Lowe* v. *Marquette Fire Ins. Co.* 351 id. 516.

The fourth contention is that the act is unconstitutional because it authorizes the gift of State property to the Authority in violation of section 20 of article IV of the constitution, and grants a special privilege or franchise contrary to the provisions of section 22 of said article. Said section 20 provides as follows: "The State shall never pay, assume or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual." Our court has construed said section 20 as permitting the State of Illinois to donate money to private persons or corporations so long as the purpose for which it is expended is for the public and not private benefit. (*Boehm* v. *Hertz,* 182 Ill. 154; *Illinois Farmers' Institute* v. *Brady,* 267 id. 98.) We deem that the furnishing of

adequate office facilities for the State government is a public purpose and the proper expenditure of State funds. Section 22 of article IV has been held to apply only to private corporations and not to public corporations. *Kocsis v. Chicago Park District,* 362 Ill. 24.

We believe that the provisions of the act authorizing *mandamus* proceedings against the Illinois State Public Building Authority violate section 26 of article IV of the constitution of 1870, which provides: "The State of Illinois shall never be made defendant in any court of law or equity." *Mandamus* against a department or agency of the State government constitutes a suit against the State. (*People ex rel. Freeman v. Department of Public Welfare,* 368 Ill. 505.) The provision, however, is clearly severable and its elimination would not affect the validity of the act as a whole.

It is also contended that the provisions of the act authorizing the issuance of $12,000,000 in bonds without a vote of the people violates section 18 of article IV of the constitution, which provides for a vote by the people on all bond issues in excess of $250,000. The intent and purpose of the act as declared is to enable the State of Illinois to acquire and eventually own, free and clear of all encumbrance, a building or buildings, which will furnish adequate and modern office space for its officers and departments. Subsection 2 of section 6 of the act provides that the bonds to be issued thereunder "shall be payable solely from the income derived from the operation of the building, or buildings, and shall not constitute an indebtedness of the Authority, or the State of Illinois, payable in any other manner." It is difficult to see how this can be accomplished under the terms of this act. It is clear that the rent to be paid by the State of Illinois is substantially the only contemplated source of revenue of the Authority. The leases made by the State will, of necessity, have to be made with

reference to the payment of interest on the bonds and the payment of principal, and the appropriation will have to be made with reference to the rentals fixed in the leases.

The intent and purpose of the constitutional restriction is to impose a limitation on the power to appropriate, by limiting the amount of the indebtedness which may be incurred without a vote. There is, however, an exception to section 18, article IV, contained therein, excepting from its provisions State indebtedness incurred "for the purpose of repelling invasion, suppressing insurrection or defending the State in war." The purpose of the act before us does not come within that exception. In the present act there is an avenue opened for the building of lavish and elaborate buildings which might necessitate large and unusual appropriations to meet excessively high rentals, to meet the interest and principal payments for bond requirements. However admirable or desirable the plan may be, without some limitation on the amount of rentals to be fixed in the leases, or some guide as to how they should be ascertained, the act violates section 18 of article IV of the constitution. The general scheme and plan of this act, upon which no limit is set, affords an opportunity of paying off the bonded indebtedness by appropriations and taxes which might well be construed as doing indirectly what the State cannot, because of the constitutional limitation, do directly. In *People ex rel. City of Chicago* v. *Barrett,* 373 Ill. 393, the court pointed out that obligations which are to be retired from revenues of the State are governed by the restriction contained in said section 18, article IV, even though the levy of a direct tax is not involved, and that if they are to be paid from State revenues they are State debts. A similar enactment was held invalid by the Supreme Court of Pennsylvania in *Kelley* v. *Earle,* 320 Pa. 449, 182 Atl. 501. While this case was later reopened and reconsidered, the court reversed its decision because of additional facts developed which showed that the cost of

the project would be retired by revenues from the counties of the State and not from State funds. (*Kelley* v. *Earle,* 325 Pa. 337, 190 Atl. 140.) The case of *Krause* v. *Peoria Housing Authority,* 370 Ill. 356, cited by counsel for appellees, is readily distinguishable from the present case. There the city council did not appropriate the money from which the rentals are derived and which liquidate the debt, and no department of the city was the primary user of the property. There was no demand or requirement upon the city to make any appropriations to maintain the projects or to liquidate the same.

The authorization of a bond issue in the amount of $12,000,000, payable solely from the revenue received from the operation of the buildings to be erected by the Illinois State Public Building Authority, said buildings to be rented to various departments of the State of Illinois without any limitations upon the rentals which the State will be required to pay and thus appropriate, is contrary to section 18 of article IV of the constitution. The Authority will be without funds except such revenue as may be paid to it in uncontrolled amounts under the guise of rents and then paid to the bondholders. There is a possibility that such an arrangement might be expanded into a device for expending a large amount of tax money in building projects and borrowing operations which are almost unlimited so far as this act is concerned, and, therefore, the entire act is unconstitutional, and it will be unnecessary to consider the remaining points presented in appellant's brief.

The judgment of the trial court is accordingly reversed, and the cause is remanded to the circuit court of Sangamon county with directions to allow the appellant's motion to strike and to enter a judgment of ouster against appellees.

*Reversed and remanded, with directions.*

Mr. JUSTICE SMITH, dissenting.