(No. 30381.—

JOHN S. LOOMIS, JR., Appellant, *vs.* ROY D. KEEHN *et al.*,
Appellees.

*Opinion filed June 21, 1948.*

·Hugo Sonnenschein, Jr., of Chicago, for appellant.

George F. Barrett, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and James C. Murray, all of Chicago, of counsel,) for appellees.

Mr. Justice Gunn delivered the opinion of the court:

Appellant, a citizen and taxpayer of this State, for himself and on behalf of others similarly situated, leave having been obtained, filed in the circuit court of Cook County a suit to enjoin the appellees, members of the Illinois State Armory Board and the Adjutant General of the State, from issuing bonds of the Armory Board or otherwise creating any indebtedness under the authority of the Illinois Armory Board Act, (Ill. Rev. Stat. 1945, chap. 129, pars. 223 to 228,) on the ground that such act is unconstitutional in its entirety. The Attorney General appeared for the appellees and filed an answer to the complaint, to which answer appellant filed a motion to strike as insufficient in law. The motion was denied and, appellant electing not to plead further but to stand on his complaint and motion, thereupon the complaint was dismissed for want of equity. A construction of the constitution and the validity of a statute being involved the appeal comes directly to this court.

The Illinois Armory Board Act was approved July 8, 1935, and creates the Illinois State Armory Board as a body politic and corporate, possessing all of the powers necessary to accomplish the purpose of the act, and enumerates the various powers as set out in section 4, among

which are: To enter into any contracts for any corporate purpose defined in the act; and "(b) to borrow money and issue bonds, and to pledge any and all property and income of such Board acquired or received as herein provided, to secure the payment of such bonds and to redeem such bonds." The Armory Board is given power to sue and to be sued, to acquire, hold and convey real estate and personal property, by gift or purchase, for armory purposes; to donate such property to the State of Illinois if and when all of its debts, which have been secured by such property, have been paid; to purchase sites and buildings or purchase sites and construct buildings for armory purposes; to execute leases of buildings and sites to the State of Illinois for armory purposes, "and in the event of non-payment of rents reserved in such leases to execute leases thereof to others for any suitable purpose. Such leases to the State shall be subject to appropriations to be made by the General Assembly, for the payment of rent under such leases. The rent charged the State of Illinois shall not be in excess of the amount necessary for the retirement of bonds secured by the property leased to the State, and other expenses incident thereto, including cost of operations."

Appellant claims the statute is void for various reasons, hereinafter set out, and also that the bonds about to be issued by the Illinois State Armory Board violate the constitution of Illinois in that they create a debt against the State of Illinois in excess of $250,000, without a referendum authorizing it. On the other hand, the appellees answer this proposition by saying that the bonds are not to be issued by the State but by a corporation authorized by law, and that the said bonds are payable solely out of the rent and income, or the pledge of the corporation's property, and therefore do not create a debt against the State. Appellees also insist that if said corporation is regarded as an arm of the State, its bonds may be issued for repelling invasion, suppressing insurrection and defend-

ing the State in war, without a vote of the people, under the proviso of section 18 of article IV of the constitution.

The principal controversy between the parties involves the question of whether a debt against the State of Illinois is created by the act of the Illinois State Armory Board in issuing bonds, and, if created, whether it comes within the proviso of section 18, article IV, permitting such bonds to be issued without a vote of the people.

When all of the provisions of the statute enumerated above are analyzed it discloses that the legislature has created a corporation mainly for the purpose of building armories; that such armories may be leased to the State, and in the event of the nonpayment of rent by the State, may be leased to others for suitable purposes; and that such corporation may pledge its property, or income, to secure loans made by it. It is not perceived how the corporation becomes an arm of the State solely because it may lease property to the State.

Before the passage of the act of 1935 there was no provision made by statute for any armory board to acquire land and build armories. There was likewise no provision in the Militia Act of 1874 (Ill. Rev. Stat. 1874, chap. 129,) for the building of armories. The Cities and Villages Act provided, by section 103 of article 23, and prior acts, that the city could acquire land and lease or donate it to the State for armory purposes, and section 1 of article XVIII of the Military and Naval Code (Ill. Rev. Stat. 1947, chap. 129, par. 155,) also provides that armories may be be leased from the Armory Board.

It was early held that the State had an inherent power to organize its militia and provide for its training, (*Dunne* v. *People*, 94 Ill. 120,) which would include the use of an armory in which to train it. Until the adoption of the Illinois Armory Board Act the State apparently either voted funds to build an armory, or leased it from others, or received donations from cities and villages, all of which

merely goes to show that another method of building armories and leasing them to the State was provided by the act under consideration, so that eventually, when completely paid for, they could be donated to the State.

Neither is it perceived how the State becomes liable for the debts of the Armory Board Corporation merely because it pays rent for the use of an armory. By the same measure it could become liable for the debts of the armory owned by a city or an individual merely because money was appropriated which was to pay rent upon a building not completely paid for.

The Illinois Armory Board act provides how a public corporation may acquire a site, build an armory, lease it to the State of Illinois for use of its militia, and pledge its building and income to pay a loan necessary for the acquisition of the site and the construction of the building. If the rent is not paid no claim is preserved against the State, but on the contrary authority is given to the State Armory Board to lease the property for another suitable purpose. The fact that the State of Illinois appropriates, during the regular session of the General Assembly, money to pay the rent does not create a debt, as current obligations are not so regarded. *People ex rel. Toman* v. *Mercil & Sons Plating Co.* 378 Ill. 142.

We consider the provisions of the State Armory Board Act, authorizing a pledge of the income or property of the Board, as creating a debt against the property of the Board, and to which, alone, the holders of its bonds may look, and this does not create a debt against the State, as the statute does not so designate and we have frequently held that under similar statutes the public body benefiting from such a corporation is in no way obligated to pay the bonds secured by income, such projects being self-liquidating, and the pledge of the property partakes of the nature of the purchase-money mortgage. *People ex rel. City of Chicago* v. *Barrett,* 373 Ill. 393; *Hairgrove* v. *City of*

*Jacksonville,* 366 Ill. 163; *Rockford Savings and Loan Ass'n* v. *City of Rockford,* 352 Ill. 348; *Ward* v. *City of Chicago,* 342 Ill. 167; *Krause* v. *Peoria Housing Authority,* 370 Ill. 356; *Maffit* v. *City of Decatur,* 322 Ill. 82.

This rule seems to be general throughout the different jurisdictions, as may be ascertained from notes in 146 A.L.R., p. 328, and 72 A.L.R., p. 687. Certainly there is nothing in the act which gives the State of Illinois the right to take and receive the revenue, rents, or income of such armories until it has acquired title thereto. And, even though the statute did contain such a provision, it has been held that such income need not be turned over to the State Treasurer. (*Green* v. *Black,* 352 Ill. 623.) We are of the opinion that the pledge of the rentals, income, and property of the armories owned by the Illinois State Armory Board does not create a debt of the State of Illinois, and that the holder of such bond or bonds of such Armory Board so secured does not have a claim against the State of Illinois by reason thereof, and that the sole security of such bond-holder is the property or income pledged in the indenture or instrument executed by authority of the State Armory Board.

Appellant relies heavily upon *People* v. *Barrett,* 373 Ill. 393, and *People ex rel. Greening* v. *Green,* 382 Ill. 577. These cases do not support the claim of appellant. In the *Barrett case* the legislature authorized the issuance of tax warrants for the purpose of creating a fund to build highways. Such warrants were payable from the motor fuel taxes, and the act provided that the tax would not be reduced below a rate that would pay interest on the warrants and create the sinking fund necessary for their discharge. While the State did not issue the warrants, the act obligated the General Assembly for years in advance to authorize a tax out of which only the warrants could be paid. This obligation to raise money by taxation to pay the warrants was properly held to incur a debt, since the tax must be

levied and must be applied in discharge of an obligation. The *Green case* presented a situation where an authority created by the legislature for the purpose of raising the money had a board of management almost identical with the executive State authorities. The act authorized a building authority to acquire a building at a cost of $12,000,000, to house State officials, and for the State to lease the building and pay the rentals, which would be pledged to finance the cost of the building. The act contained this singular provision: "Such bonds  *  *  *  shall not constitute an indebtedness of the Authority or the State of Illinois in any other manner." The board of directors consisted substantially of all of the State Officers, *viz.,* the Governor, the Lieutenant Governor, Secretary of State, Treasurer, Auditor of Public Accounts, Superintendent of Public Instruction, Attorney General and a member of the Supreme Court. It will be thus observed that the Board was composed of the officers whose duty it was to enforce the law, and to protect the revenues of the State. The act also provided that such executive officers might be required by *mandamus* to perform the Authority's agreement with respect to revenue for the benefit of the bondholders. The identity of the State, through its officers, and its public building Authority through the same officers, was so perfect as to make the one but the shadow of the other, and hence the obligation of the Authority was recognized as the obligation of the State, limited to the revenue of the property acquired. The constitution does not countenance any indebtedness in excess of $250,000, however limited, without a referendum.

There is no similarity in the principle of these cases and that announced in the *Peoria Housing Authority case,* and others; nor are the facts similar. We do not regard such cases as relevant to the present situation.

Both appellant and appellees have devoted considerable space in their briefs to discussing the proviso contained in

section 18 of article IV of the constitution, permitting the State of Illinois to contract debts without a referendum, when the purpose is to repel invasion, suppress insurrection, or defend the State in war. In view of what we have said above it must be obvious a discussion of this proposition is fruitless and irrelevant, for the reason the State is not contracting a debt. The bonds are not to be issued by the State as the obligation of the State; and we might add the further reason that the proviso in section 18 of article IV on its face indicates the debt must be contracted by the State through its General Assembly, and not through the contracts of a public corporation created by it. The faith of the State for the payment of such debts must be pledged under this section of the constitution, and this can be done only by an act of the General Assembly. There is nothing in the statute indicating such a purpose, nor do we believe such proviso may be invoked to create a debt, and pledge the faith and credit of the State of Illinois for its payment, unless the General Assembly indicates the emergency exists, and contracts the debt for such purpose.

The fact that the statute does not authorize binding the State, and the bonds to be issued accordingly do not purport to bind the State but are secured only by the revenue derived from the Armory Board properties, disposes of the necessity of construing the proviso contained in section 18 of article IV of the constitution.

Appellant also contends that the Armory Board Act constitutes an unlawful delegation of legislative power in that it does not direct or limit the amount of construction to be done. The rule is that the General Assembly may confer such power on municipal bodies as is not violative of the constitution and which is necessary to accomplish the constitutional purpose desired. This well-recognized rule stems from the fact that such municipalities have more knowledge on the subject or are better able to do the thing sought to be accomplished than is the General As-

sembly. (*People ex rel. Curren,* v. *Schommer,* 392 Ill. 17; *People ex rel. Soble* v. *Gill,* 358 Ill. 261.) In the *Schommer case* and in *Mitchell* v. *Lowden,* 288 Ill. 327, power delegated to highway commissions to plan and construct roads in the State of Illinois was held not to be an illegal delegation of legislative authority. In the cases above cited, as here, it was argued that the grant of authority was too broad and that no exact direction or limitation on the number and location of roads and structures to be built was provided. As was there pointed out, such functions are not legislative functions but rather ministerial functions which are included in the planning and supervision of work to be done as a result of the legal delegation of authority to the board or commission involved.

Appellant also argues that the Armory Board Act is invalid because it authorizes suit against the State in contravention of section 26 of article IV of the constitution. Section 2 of the Armory Board Act provides as follows: "This Board is hereby made a body politic and corporate," etc. It is clear from the act that the board is not an integral part of the State and that suits against it would not infringe on the sovereignty of the State.

Counsel for appellant argues that if the Armory Board is separate and apart from the State, then the act and the contemplated indebtedness are void under the provisions of section 20 of article IV of the constitution declaring that "The State shall never pay, assume or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual." This same objection was raised in *People ex rel. Greening* v. *Green,* 382 Ill. 577. The corporation there under consideration was the Illinois State Public Building Authority. It was there pointed out that this section of the constitution had been construed as permitting the State to donate money to private persons or corporations so long as the purpose

for which it is expended is for public and not private benefit. It is obvious that the building of armories to insure the defense of the State in war is for a public and not for a private purpose.

Appellant further argues that the act is open to the objection that it violates section 13 of article IV regarding the title. The title of the act is: "An Act to create the Illinois Armory Board and to define its powers and duties." A similar title was discussed and held valid in the *Greening case,* and the reasoning applied there is to be applied here. This contention is without merit.

It is finally contended that since the General Assembly had delegated to various park boards the authority to acquire sites for armory purposes, such authority cannot be delegated to the Armory Board without withdrawing it from various park boards. Park boards are agencies of the State government. (*West Chicago Park Comrs.* v. *McMullen,* 134 Ill. 170.) Thus there is in the case before us no question of conflict between park boards, which are State agencies, and the Armory Board, which is a body politic and corporate. Moreover, the Armory Board Act is a complete act in itself. The purpose of the constitutional provision invoked here, is to avoid confusion arising from patchwork legislation. Where a new law is complete in itself and is entirely intelligible without reference to prior legislation it is valid though incidentally its effect is to modify existing law. *Chicago Motor Club* v. *Kinney,* 329 Ill. 120; *Steinhagen* v. *Trull,* 320 Ill. 382; *People ex rel. Lewman,* v. *Moyer,* 298 Ill. 143; *Maulding* v. *Skillet Fork Drainage Dist.* 313 Ill. 216.

We are of the opinion that the Armory Board Act is not open to the constitutional objections urged and that the circuit court was right in dismissing the complaint in this case. The decree of the circuit court is affirmed.

*Decree affirmed.*