(No. 34265.—

The People *ex rel.* Benjamin S. Adamowski, State's Attorney, Appellant, *vs.* Public Building Commission of Chicago *et al.,* Appellees.

*Opinion filed March 20, 1957—Rehearing denied May 20, 1957.*

126

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (GORDON B. NASH, and FRANCIS X. RILEY, of counsel,) for appellant.

JOHN C. MELANIPHY, Corporation Counsel, and WILLIAM H. DILLON, both of Chicago, for appellees.

MAX LIPKIN, Corporation Counsel, and EUGENE M. PRATT, State's Attorney, both of Peoria, INES C. HOFFMAN, Corporation Counsel, and FRANK M. PFEIFER, both of Springfield, ROBSON, MASTERS & RYAN, of Joliet, and FUQUA & FUQUA, of Waukegan, for *amici curiae*.

Mr. JUSTICE DAILY delivered the opinion of the court:
This appeal brings before us a *quo warranto* proceeding instituted in the circuit court of Cook County to challenge the constitutionality of the Public Building Commission Act, (Laws of 1955, pp. 905-920,) and certain companion legislation. The action was filed voluntarily by the State's Attorney of Cook County in the name of the People of Illinois, and named as defendants the Public Building Commission of Chicago and its individual members who are functioning under authority of the act. Defendants tested the sufficiency of the complaint by a motion to strike and, after a hearing, the court found the legislation to be constitutional, granted the motion and dismissed the cause. Plaintiff elected to stand on his complaint and this appeal has followed. During the pendency of the cause the circuit

court permitted several municipal bodies to intervene as *amici curiae* for the purpose of presenting their arguments in support of the legislation under attack. These intervenors, who have also joined in the briefs of defendants-appellees in this court, are the city and county of Peoria, the city and Public Building Commission of Springfield, the Public Building Commission of Waukegan and Lake County, the Greater Joliet Committee, Inc., and the Illinois Municipal League.

The Public Building Commission Act was adopted by the 69th General Assembly and approved on July 5, 1955. In section 2 thereof, (Ill. Rev. Stat. 1955, chap. 34, par. 257,) the legislature found and declared that in many county seats governmental bodies are operating in outmoded buildings and facilities no longer adapted or adequate to meet present day needs; that counties, cities and other agencies of government are compelled to spend large sums of money annually for the rental, operation and maintenance of additional building space; that the result has been a decentralization and scattering of governmental agencies which has made for confusion, waste and inefficiency; and that valuable public records, documents and vital statistics are stored and kept in dangerous, overcrowded and inadequate buildings. Based upon such findings, section 2 goes on to declare that the construction, acquisition and enlargement of building facilities is necessary for the purpose of centralizing governmental activities and eliminating dangerous, uneconomical and inefficient conditions, and that "the eradication of these conditions and the construction, acquisition or enlargement of such public building or buildings, in the manner hereinafter provided in this Act, is hereby declared to be a public use essential to the public interest."

To effectuate the declared public purpose, the balance of the act provides for the creation of public building commissions and fixes their powers and duties. Section 4 states

there shall be but one commission in any county and sets forth the steps necessary to effect incorporation. (Ill. Rev. Stat. 1955, chap. 34, par. 259.) Section 5, in turn, provides that a commission shall consist of an odd number of commissioners of not less than five; that a municipality which is a county seat shall appoint a number of commissioners equal to the number of commissioners of all participating municipalities, plus one; that where the county seat alone organizes the commission the presiding officer of the county seat shall appoint all commissioners; and that the board is a rotating board. (Par. 260.)

Control and management of the affairs of the commission is provided for in section 8, (par. 263) which states, in part, as follows: "Said Board of Commissioners shall have full power to pass all necessary ordinances, resolutions, rules and regulations for the proper management and conduct of the business of said Board of Commissioners and of said Public Building Commission and for carrying into effect the object for which such Public Building Commission is created." Implementing the provisions as to control and management are sections 9, 10 and 11, (Pars. 264, 265 and 266,) which relate to quorum, records and the duties and responsibilities of the treasurer.

Authority is given to the board of commissioners by section 12 (par. 267), to employ technical, professional and clerical assistants as necessary, and provision is also made for the loan of employees from participating municipalities in the following manner:

"For the purpose of aiding and cooperating with a Public Building Commission, the municipal corporations participating in its organization may assign or loan any of their employees, whether under Civil Service or not, to the Public Building Commission to aid in the performance of any of the work of the Public Building Commission, and may provide necessary office space, equipment or other facilities for the Public Building Commission.

"Any such employees so assigned or loaned who are member[s] or beneficiaries of any existing pension or retirement system or who have been appointed to positions in the service of such participating municipal corporations under rules and classifications of any Civil Service Commission shall have the same status with respect thereto after assignment to the Public Building Commission.

"To facilitate the Public Building Commission in aid of any project undertaken by it any municipal corporation joining in its organization may make available to the Public Building Commission the services of its engineering staff and facilities."

Section 13 (par. 268,) makes provision that since the act is designed to effect a public use and purpose, any municipal corporation "which may be desirous of renting space" in any building of the commission, "may make donations of property, real or personal, or cash grants to the Public Building Commission in such amount or amounts as they may deem proper and appropriate in aiding the Public Building Commission to effectuate the purpose for its creation."

The status and powers of the commission are outlined in section 14 (par. 269,) which states that the commission shall be a separate municipal corporation, with the power to sue and be sued, and to make, amend or repeal its bylaws. The section further provides the commission shall have the express and incidental powers necessary to carry out the following public and essential governmental functions:

(a) To select, locate and designate a contiguous area "wholly within the territorial limits of the county seat" as the location for its improvements.

(b) To acquire in fee simple streets, alleys and other public places and personal property "by purchase, gift, devise, or by the exercise of the power of eminent domain."

(c) To demolish, repair, alter or improve buildings and facilities, furnish and equip the same.

(d) To pave and improve streets, construct and repair sidewalks, sewers, water pipes and similar facilities including landscaping.

(e) To provide offstreet parking.

(f) To operate, maintain and manage or contract for the same of its buildings and other facilities.

(g) To employ and discharge, without regard to the civil service, staff employees.

(h) To rent its buildings and facilities "to any municipal corporation which organized or joined in the organization of the Public Building Commission" or to any public body of whatever nature "rendering a public service in such county seat or county for any period of time, not to exceed fifty (50) years."

(i) To rent space in such buildings not needed by a governmental agency "as the board of commissioners may determine will best serve the comfort and convenience of the occupants * * * upon such terms and in such manner as the board of commissioners may determine."

(j) To do (h) and (i) above by written leases.

(k) To procure and contract for insurance upon the facilities and their operations.

(l) To accept donations, contributions, capital grants or gifts in aid of any purposes of the act.

(m) To borrow money and issue revenue bonds.

Under the provisions of section 15 (par. 270) the board of commissioners are authorized to issue revenue bonds with a maximum maturity date of 40 years, "payable solely from the revenues derived from the operation, management or use of the buildings or other facilities acquired or to be acquired by the Commission, which revenues shall include payments received under any leases or other contracts for the use of the facilities, buildings or space therein." In this respect the section provides that "All bonds shall recite in the body thereof that the principal and interest thereon are payable solely from the revenues

pledged to pay the same and shall state on their face that it is not an indebtedness of the Commission or a claim against the property of such Commission." Further, the section provides: "No bond issued under this Act shall constitute a debt of the Commission or of any public body within the meaning of any statutory or constitutional limitation as to debt." Returning to revenue, which is directed to be established in the light of the demand to pay interest and retire bonds, the section concludes as follows: "From and after the issuance of bonds as herein provided it shall be the duty of the Board of Commissioners to establish and fix rates, rentals, fees and charges for the use of any and all buildings or space therein or other facilities owned and operated by the Commission, sufficient at all times to pay maintenance and operation costs and to pay the accruing interest and retire the bonds at maturity and to make all payments to all accounts created by any bond resolution and to comply with all covenants of any bond resolution."

Section 18 (par. 273), which is of particular importance to this proceeding, relates to the levy and collection of an annual tax to pay lease rentals. In substance it provides that whenever a municipal corporation having taxing power, enters into a lease with a Public Building Commission, it shall enact an ordinance or resolution providing for the levy of a direct annual tax sufficient to pay the annual rental under the lease when it becomes due and payable. Thereafter the section provides that a copy of the lease and ordinance shall be filed with the county clerk in each county who is then charged with the duty of ascertaining the rate necessary to produce such sum and to extend it annually against all the taxable property in the municipal corporation served in the lease.

The final section of the act having significance on this appeal is section 22 (par. 277,) which ordains that: "All property of the Public Building Commission shall be exempt from taxation by the State or any taxing unit therein."

Concurrent with the enactment of the Public Building Commission Act the legislature amended the Counties Act, (Laws of 1955, pp. 920-923,) the Sanitary District Act, (Laws of 1955, pp. 930-934,) the School Code, (Laws of 1955, pp. 961-962,) the Chicago Park District Act, (Laws of 1955, pp. 953-954,) and the Revised Cities and Villages Act, (Laws of 1955, pp. 845-846,) to permit various municipal corporations to participate in a public building commission, and authorizing them to enter into leases with the commission for periods not in excess of 50 years. In each instance the amendments provided, as stated in the amendment to the Revised Cities and Villages Act, that the lease obligation "shall not be deemed to be an indebteness of the municipality within the meaning of any constitutional or statutory limitation upon municipal authorities, but the obligation shall be deemed to be current expense for the year in which it is paid."

The basic inhibitions placed by law on the finances of municipal corporations are found in section 12 of article IX of the Illinois constitution which, by one proviso, limits municipal indebtedness to "five per centum on the value of the taxable property," and, by a second, requires a municipal corporation incurring an indebtedness to provide for "the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." It is appellant's theory that the operation of section 18 of the act is such as to cause the bonds issued by a building commission to in fact become general obligation bonds of municipalities entering into leases with a commission, and that the bonds carry with them the constitutional obligation of the municipality to levy and collect the tax required for their payment. He says this is so because a municipality entering into a lease is obligated by section 18 to do the following without alteration or discretion: (a) Pass an ordinance to

levy and collect a direct annual tax sufficient to pay the annual rent; (b) file a certified copy of the lease and ordinance with the county clerk who, also without reservation or discretion, must extend the taxes in each year necessary to pay the annual rent, and ascertain the rate which, upon the full fair cash value of all the municipality's property subject to taxation, will produce a net amount of the annual tax reserved in such lease. Under this legislative scheme it is urged that the obligation to levy taxes becomes absolute and transforms the leases from rental agreements into a general obligation for the bonds.

Appellant's theory, however, overlooks other provisions of the act and takes no cognizance of the fact that a public building commission is a governmental entity given the power to perform public functions separate and apart from the municipalities entering into leases with it. Section 15 of the act provides that bonds issued by a commission, and the interest thereon, shall be payable solely from the revenues derived from the operation, management or use of buildings or other facilities acquired by the commission, that such bonds shall not constitute a debt of the commission or any public body, that they shall not be a claim against property of the commission and that such limitations shall be recited in the body of the bonds. The obligation, then, is to be paid solely from the revenues and income derived from property purchased with the bonds or their proceeds and we have held under comparable statutory provisions that such an obligation is not an indebtedness within the proscriptions of our constitution. (*People* v. *Chicago Transit Authority*, 392 Ill. 77; *Loomis* v. *Keehn*, 400 Ill. 337; *People* v. *Illinois Toll Highway Commission*, 3 Ill.2d 218; *People ex rel. Coutrakon* v. *Lohr*, 9 Ill.2d 539.) From these authorities it is clear that the bonds do not become general obligations of the issuer, but the question remains as to whether, as appellant contends, the circumstance that the bulk of the revenue will in fact be derived

from the annual rentals pledged by the participating municipalities causes the bonds to become general obligations of debt of those municipalities within the purview of the constitution. This question, in turn, has been answered in *Loomis* v. *Keehn,* 400 Ill. 337, where revenue bonds issued by the Illinois Armory Board, a body politic and corporate appointed by the Governor, were held not to create a debt against the State even though the revenue to pay the bonds was derived from rentals paid by the State.

Under the act presently before us, the commission and the municipalities joining in its creation are separate and distinct entities, each exercising separate and distinct functions and, unlike the statute considered in *People ex rel. Greening* v. *Green,* 382 Ill. 577, no similarity or identity of officers is created which would warrant a finding that one corporate body is but a shadow of the other. The municipalities have no control over the commission, or over the exercise of any of the essential governmental and public functions given the commission by section 14. Furthermore, the purchasers of the bonds are specifically advised that the only source of payment to which they may look is the income derived by the commission from the operation of its facilities. Municipalities leasing facilities do not obligate themselves to pay the principal or interest on the bonds but only the stipulated rental. As in the *Loomis case* we fail to perceive how it can be said the renting municipalities become liable for the bonds issued by the commission, a separate governmental entity, merely because they pay rent for the use of the commission's building.

Although not controlling, helpful analogy is found in the decisions of courts in other jurisdictions which have held, in sustaining statutes very similar to our own, that municipalities by entering into leases with a public building authority do not obligate themselves for the payment of principal and interest on revenue bonds issued by the

authority. See: *Walinske* v. *Detroit-Wayne Joint Building Authority,* 325 Mich. 562, 39 N.W.2d 73; *Kelly* v. *Earle,* 325 Pa. 337, 190 Atl. 140; *Jefferson Township High School* v. *Jefferson Township,* 212 Ind. 542, 10 N.E.2d 608.

We conclude that section 18 does not operate to cause the bonds issued by the commission to become general obligations of the leasing municipalities so as to constitute an indebtedness of the municipalities within the meaning of the constitution.

Relying upon decisions of this court which have defined the term "indebtedness" as used in section 12 of article IX of our constitution, appellant next contends that the leases authorized by the act and its companion legislation create a present debt for the aggregate of all rentals for the term of the lease. On such basis it is urged that the total rental must be included as a debt of the leasing municipality within the constitutional limitation of five per cent, and that in those instances where a lease exceeds 20 years, payment of such debt will not be accomplished within the 20-year period fixed by the constitution. Appellees insist, as the trial court found, that the leases will not create a debt within the meaning of the constitution, and that they will not violate the 20-year limitation even though they are for terms in excess of 20 years.

In numerous decisions ranging from *City of Springfield* v. *Edwards,* 84 Ill. 626, to *East St. Louis and Interurban Water Co.* v. *City of Belleville,* 360 Ill. 490, we have held the provisions of section 12 of article IX to be mandatory and self-executing, and have held that the indebtedness specified therein is the voluntary incurring of a legal liability to pay; that a debt payable in the future ·is no less a debt than if payable presently; that a debt payable on a contingency, such as the rendering of service, is no less a debt and therefore within the inhibition; that if a contract or undertaking contemplates a liability to pay, the debt exists; that it makes no difference whether the debt

be for necessary current expense or something else; and that inchoate or completely consummated liabilities are included, regardless of their manner or purpose. (See: *Law* v. *People ex rel. Huck*, 87 Ill. 385; *City of Chicago* v. *McDonald*, 176 Ill. 404; *Village of East Moline* v. *Pope*, 224 Ill. 386.) We have stated too that when we come to consider indebtedness from a standpoint of time, the time of incurring the liability governs. (*City of Chicago* v. *Galpin*, 183 Ill. 399.) Based upon such principles, we have consistently held that where a contract calls for the payment of annual installments an indebtedness is at once created for the aggregate of all the installments. That the same principle has been applied to future lease and rental obligations is demonstrated by *Wade* v. *East Side Levee and Sanitary District*, 320 Ill. 396, at 410, and *East St. Louis and Interurban Water Co.* v. *City of Belleville*, 360 Ill. 490. In the first case we held that $19,000 in rentals for office space which would accrue under a written lease for a term of 11 years was an obligation of the district which was properly included in the reckoning of its municipal indebtedness; in the latter case we found that an ordinance binding the city of Belleville to pay a stipulated annual rental on fire hydrants at once created an indebtedness for the aggregate of all rentals.

An examination of the annotation found in 103 A.L.R. 1155, as well as the comment of this court in the *City of Belleville case* (p. 493), reveals that our definition of the term "indebtedness," as it is used in constitutional provisions limiting debt, is not as liberal as that indulged in by a majority of jurisdictions. Simply stated those jurisdictions have differentiated between a future obligation to pay for consideration presently received and an obligation for consideration or services to be received in the future; or, as the court put it in *Schnell* v. *City of Rock Island*, 232 Ill. 89, at 97: "They have been unable to see any line of demarkation between the appropriation, by a munici-

pality, of taxes which have been already levied and are legally certain to reach the treasury, where the appropriation operates only to assign the fund without creating any obligation on the part of the municipality, and a contract by which a municipality obligates itself to make levies in the future and appropriate the same to a designated object."

In presently seeking to uphold their theory that leases with a public building commission will not create a constitutional indebtedness for the lessee municipalities, appellees urge upon us the liberal interpretations of the majority view, particularly as expressed in cases concerning leases with public building authorities, (*Walinske* v. *Detroit-Wayne Joint Building Authority*, 325 Mich. 562, 39 N.W.2d 73; *Kelly* v. *Earle*, 325 Pa. 337, 190 Atl. 140; *Protsman* v. *Jefferson-Craig Consolidated School Corp.* 231 Ind. 527, 109 N.E.2d 889; *Ambrozich* v. *City of Eveleth*, 200 Minn. 473, 274 N.W. 635,) and assert in addition that a distinction should obtain between municipal obligations arising under contracts and those created by leases for the rental of improved real estate. Adverting to the point last made we must hold that neither the constitution nor the previous decisions of this court permit the distinction urged. First of all it is to be noted that the constitutional prohibition is against becoming "indebted in any manner or for any purpose." Secondly, under the provisions of section 18 of the act, a municipality entering into a lease with a commission incurs a legal and, insofar as the section provides, an irrevocable liability to pay the rental agreed upon for the full term of the lease. Although the rentals are payable in the future and perhaps upon the contingency that the leased space will continue in existence, the obligation is a fixed liability and an indebtedness within the constitutional definition adhered to in this State for almost 100 years.

Insofar as the decisions of other jurisdictions are concerned an examination of the reports of this court show

that we have periodically reviewed and rejected the contention that obligations to be paid in the future do not create a present subsisting debt against a municipality. (*East St. Louis and Interurban Water Co.* v. *City of Belleville,* 360 Ill. 490; *City of Chicago* v. *McDonald,* 176 Ill. 404; *City of Chicago* v. *Galpin,* 183 Ill. 399; *Wade* v. *East Side Levee District,* 320 Ill. 396.) The decisions cited to us are thus unpersuasive, for no reason is either presented or suggests itself for a departure from the principles attending the definition of indebtedness to which we have long been committed. We hold, therefore, that the leases provided for in the legislation at hand will create a present debt of the lessee municipalities for the aggregate of all the rental, and that the circuit court erred in finding to the contrary.

To protect against the result we have reached under the foregoing point of contention, appellees have advanced the further argument that the mandates and prohibitions of the second proviso of section 12 of article IX extend only to interest-bearing indebtedness, and to no other type. Thus it is urged that even if leases entered into by municipalities with the commission create an indebtedness, they are not of the class which must be discharged within 20 years because they bear no interest. Similar contentions were made in *Baltimore and Ohio Southwestern Railroad Co.* v. *People ex rel. Gaston,* 200 Ill. 541, and *County of Coles* v. *Goehring,* 209 Ill. 142, and were held to misapprehend the constitutional proviso involved. The rationale of the cited decisions is that the second sentence of section 12 of article IX requiring municipal corporations, before incurring indebtedness, to provide for the collection of a direct annual tax, has reference to an indebtedness that has become fixed in amount and payment deferred to a certain time in the future. This is the type of indebtedness which will result under the leases authorized by the present legislation. *Town of Kankakee* v. *McGrew,* 178 Ill. 74, upon which

appellees rely, is authority only for the proposition that, within the five per cent limit, it is lawful for a municipality to contract debts without providing for an annual tax, unless payment of such indebtedness is deferred to a fixed future period and bears interest. This finding of the court affords no basis to say indebtedness not bearing interest need not be paid within the constitutional limit of 20 years. Appellees have quoted to us a portion of the constitutional debate that attended the drafting of the section. We find nothing, however, which indicates an intention to limit the section to interest-bearing indebtedness. We hold, therefore, that the indebtedness created by the leases here is an indebtedness which falls within the second proviso of section 12 of article IX.

Although section 1 of the act provides that it shall be known and cited as the "Public Building Commission Act," its formal and complete title is: "An Act to authorize the creation of Public Building Commissions and to define their rights, powers and duties." It is appellant's next contention that such title fails to satisfy the requirements of section 13 of article IV of our constitution, which relates to the formalities requisite to the enactment of legislation by the General Assembly. Specifically, it is urged that the title does not express the subject matter of the act, that it embraces more than one subject, that it omits mention that the act amends other acts, and that it makes no mention that the act amends the several limitations on the rate and amount of taxes, and the referenda provisions of other acts. Identical constitutional objections were made and rejected in *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539, where we upheld the validity of a statute entitled: "An Act to provide for a Metropolitan Fair and Exposition Authority in metropolitan Cook County and to define its powers and duties." The Public Building Commission Act is likewise an act complete in itself, thus what was said in the *Lohr case,* (pp. 549-551,) has equal application to the

title and constitutional objections presently under consideration, and provides a conclusive answer to appellant's contentions which we see no necessity to repeat. See also: *People* v. *Chicago Transit Authority*, 392 Ill. 77, pp. 90-91.

Appellant next urges the act purports to create a municipal corporation but fails to confer upon it any of the attributes of a municipal corporation. No merit can attach to such a contention in light of the views expressed in answer to similar contentions in *People ex rel. Coutrakon* v. *Lohr*, 9 Ill.2d 539, 547-548, and *People* v. *Chicago Transit Authority*, 392 Ill. 77, 90, where we considered, respectively, the act providing for a Metropolitan Fair and Exposition Authority and the act providing for a Metropolitan Transit Authority. The expressed intentions and provisions of those acts, which were held to create municipal corporations, are indistinguishable from the expressed intention and provisions of the Public Building Commission Act.

Under this point appellant advances the alternative argument that a commission's functions are proprietary rather than governmental, causing it to be a private corporation which is not entitled to the rights, privileges, powers and exemptions of a municipal corporation. It has long been settled that the legislature has almost unlimited power to create municipal corporations for the purpose of wielding such governmental powers of the State as may be necessary and proper. (*People ex rel. Honefenger* v. *Burris*, 408 Ill. 68; *Wilson* v. *Board of Trustees*, 133 Ill. 443.) Equally certain is the legislature's power to create a municipal corporation even though it is to serve but one purpose, provided that purpose is a public purpose. (*People ex rel. Gutknecht* v. *Chicago Regional Port District*, 4 Ill.2d 363; *People ex rel. Royal* v. *Cain*, 410 Ill. 39.) No one can seriously deny that the acquisition of land and the erection of a building thereon to be leased to governmental bodies is a public purpose. Indeed, in *People ex rel. Greening* v.

*Green,* 382 Ill. 577, 584-585, it was expressly held that "the furnishing of adequate office facilities for the State government is a public purpose." It should follow equally that the function of providing adequate, centralized, economical and safe buildings, to house the various agencies of local government and their vital records and statistics, is a governmental function.

Appellant's claim that a public purpose is not served and that a governmental function will not be performed, is based chiefly upon the fact a commission is authorized to rent space to private persons. He reasons that it is thus possible for the buildings to be operated for the primary benefit of private persons or corporations, making the commission a private real-estate corporation from whom the public will obtain only ancillary benefit. Apart from the fact the predominant use of the buildings by private interests would be a departure from the public purpose expressed in the act, we do not find its provisions susceptible to the construction urged upon us. Section 14(h) authorizes the commission to lease to any governmental body; section 14(i) authorizes the lease of space "as from time to time may not be needed by any governmental agency for such other purposes as the Board of Commissioners may determine will best serve the comfort and convenience of the occupants of such building or buildings." Inasmuch as the occupants referred to are governmental agencies and their employees, there could be but few private enterprises, such as those relating to daily needs for meals, barber shops or drugs, which could reasonably be said to relate to their comfort and convenience. When it is considered too that the authority of the commission to erect buildings is necessarily circumscribed by the reasonable building needs of the governmental units within the county, we see no basis to say that the commission's function may or will become the operation of a real-estate business for the benefit of private persons. It is to be presumed that a commission

will not exceed the powers granted to it (*Kankakee Housing Authority* v. *Spurlock,* 3 Ill.2d 277,) and the possibility it may do so affords no basis for holding the act unconstitutional. *Poole* v. *City of Kankakee,* 406 Ill. 521.

Turning again to the provisions of section 14(i) which authorize the lease of space to private persons and to the power of eminent domain conferred by section 14(b), appellant contends the act unconstitutionally authorizes the taking of private property for private purposes. (See: *Kreigh* v. *City of Chicago,* 86 Ill. 407.) There is ample and applicable authority, however, which establishes the fact that where the primary purpose for which property is taken is a public purpose, the fact some portion of it may be rented to a private individual does not destroy the public purpose, so long as the private benefit does not clearly dominate the public use. (See: 18 Am. Jur., Eminent Domain, sec. 41; *Loomis* v. *Keehn,* 400 Ill. 337, 340; *Poole* v. *City of Kankakee,* 406 Ill. 521, 529-530; *Carstens* v. *City of Wood River,* 344 Ill. 319, 324.) Appellant's argument under this point again expresses apprehension that a commission may acquire and erect buildings beyond public needs and devote itself primarily to the function of renting to private firms. It is to be repeated that the act may not be construed to permit private use to predominate over the public purpose, and that if a commission should attempt to exceed the authority the act confers, the citizens and taxpayers affected are not without their remedies to prevent it.

Complaint is next made by appellant that the granting of a tax exemption to a commission on its property (sec. 22) violates section 3 of article IX of the constitution and grants to a commission a special privilege, franchise or immunity contrary to the mandate of section 22 of article IV of the constitution. The provision of section 3 of article IX is that "The property of the state, counties, and other municipal corporations" may be exempted from taxation.

For reasons more fully discussed in the decisions cited this court has held that the words "other municipal corporations" applied to sanitary districts, (*Sanitary District of Chicago* v. *Hanberg*, 226 Ill. 480); housing authorities, (*Krause* v. *Peoria Housing Authority*, 370 Ill. 356); municipal water plants, (*City of Mattoon* v. *Graham*, 386 Ill. 180); and a metropolitan transit authority (*People* v. *Chicago Transit Authority*, 392 Ill. 77.) Since we have concluded that a public building commission is a municipal corporation created for a public purpose and that its functions are governmental rather than proprietary, it may be concluded, upon authority of our past decisions, that the exemption granted by the constitution extends to a municipal corporation such as a public building commission.

Nor is there merit to the contention that the section of the act granting the exemption offends the mandate of section 22 of article IV of the constitution which forbids the enactment of special and local laws. The Public Building Commission Act is a law which is complete in itself and has equal application to all counties and localities faced with drastic building inadequacies. Apart from this, the legislature, following the pattern which met this court's approval in *People* v. *Chicago Transit Authority*, 392 Ill. 77, 94-95, amended section 19 of the Revenue Act, (Laws of 1955, pp. 954-957,) by the addition of subparagraph (15) which expressly exempts from taxation the property of any municipal corporation created for the purpose of providing buildings or space therein for use of municipal corporations and other governmental agencies. There can be no question that section 19, which grants exemptions to property of the Federal government, the State and local governments, and various classes of institutions, is a general law.

Because sections 12 and 13 of the act permit participating municipalities to loan personnel and to make grants of property or cash to a commission, appellant contends that

the constitutional direction that no municipality shall ever loan its credit to any railroad or private corporation, (Const. of 1870, sep. sec. 2,) is violated. Such a contention must fail in the face of our finding that a commission is not a private corporation and in view of our decisions which hold separate section 2 has no application to corporations which have no capital stock or which are not organized for profit. *Cremer* v. *Peoria Housing Authority,* 399 Ill. 579, 594; *Furlong* v. *South Park Commissioners,* 340 Ill. 363, 369.

We also find the act is not subject to the objection that it delegates legislative authority to a commission in terms so indefinite and uncertain as to deny due process of law. (See: *Krebs* v. *Thompson,* 387 Ill. 471, 477.) Appellant in contending to the contrary has done so by isolating the language of section 14 which authorizes a commission to make, amend and repeal bylaws, rules and regulations, and the language of section 8 empowering a commission to pass ordinances, rules and regulations for the proper conduct and management of its business. This language, it is urged, informs neither a commission nor those affected by its operation what authority will be exercised. The narrow basis adopted for such argument overlooks that section 14 provides that the bylaws, rules or regulations may not be "inconsistent with this Act," and that the ordinances, rules and regulations authorized in section 8 are limited to those necessary for "carrying into effect the object for which such Public Building Commission is created." Since the powers and objects of a commission are expressly defined in other provisions of the act, which is an act complete in itself, the isolated language relied upon affords no basis to say the entire act is indefinite and uncertain.

Further under this point, and again on the basis of the isolated language of sections 8 and 14, appellant urges the powers granted are too broad and have the effect of conferring upon a commission the arbitrary power of de-

termining what the law shall be. Here again we are of the opinion that recourse to the entire act is sufficient to defeat the contention made. The limitations contained in the sections show clearly that a commission is given no discretion as to what the law shall be, but only some discretion as to its execution which must be exercised under and in pursuance of the law. (See: *Sheldon* v. *Hoyne*, 261 Ill. 222.) Moreover, this court has long held that to establish the principle that whatever the legislature shall do it shall do in detail or else it will go undone, would in effect, destroy our scheme of government. (*People* v. *Reynolds*, 5 Gilm. 1; *School District No. 79* v. *County Board of School Trustees*, 4 Ill.2d 533.) Accordingly, we have held that the legislature may constitutionally delegate to the municipal corporations it creates the power to legislate on matters of purely local concern connected with their municipal affairs, (*People ex rel. Soble* v. *Gill*, 358 Ill. 261; *City of Chicago* v. *Stratton*, 162 Ill. 494,) and such functions as may be more advantageously performed by the municipal corporation. (*Loomis* v. *Keehn*, 400 Ill. 337; *People ex rel. Curren* v. *Schommer*, 392 Ill. 17.) The powers conferred by the act in question do not transcend these concepts.

It is next contended by appellant that since the act permits the lease of unneeded space to private persons it contravenes section 10 of article IX of our constitution by authorizing the expenditure of corporate funds for other than corporate purposes. The constitutional provision relied upon prohibits the legislature from imposing a tax on a municipality, or the inhabitants or property thereof, for corporate purposes. While the meager argument of appellant make it difficult to see the application of the constitutional provision to the contention made, particularly since a municipal corporation is bound to levy a tax only if it chooses to enter into a lease with a commission, it is sufficient to point out that section 10 of article IX has

been construed to mean that the legislature may compel a municipal corporation to perform any duty which relates to the general welfare and security of the State although the performance of the duty will be paid by local taxation. (*People ex rel. Cannon* v. *City of Chicago,* 351 Ill. 396, 399-400; *People ex rel. Nelson* v. *Jackson-Highland Building Corporation,* 400 Ill. 533, 536-538.) Apart from the fact that we have already held that the limited power of leasing to private persons does not destroy the public purpose of the act and cause a commission's functions to be proprietary rather than governmental, we think it incontestible that the Public Building Commission Act has in it elements of public interest and welfare which are not purely local, but State-wide and sufficient to justify the tax.

Turning to the provision of section 4 which vests in the governing body of a county seat the intitiative for creating a commission, and to the further provision which limits participation to those municipalities "any part of whose area of jurisdiction lies within the territorial limits of that county seat," appellant contends the act discriminates against municipalities which are not county seats, grants special privilege and immunities and is special legislation, all in violation of secton 22 of artcle IV of our constitution. The constitutional provision provides that the General Assembly shall not pass local or special laws in certain enumerated cases, among which is the granting to any corporation, association or individal any special or exclusive privilege, immunity or franchise, and concludes that "In all other cases where a general law can be made applicable, no special law shall be enacted." If the subject matter of an act is not within an enumerated case, (and this court has held as recently as *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539, 548-549, that an act creating a municipal corporation other than a city, town or village, does not fall within the enumerated cases,) then, under the general provision of section 22 of article IV that a special or local law

shall not be passed where a general law can be made applicable, the legislative enactment may be special as to members of a designated class, where the classification rests upon some difference or attribute marking them as proper objects for the operation of the special legislation. (*People* v. *Wilcox*, 237 Ill. 421; *Hunt* v. *County of Cook*, 398 Ill. 412.) As pointed out in the case last cited (p. 419) "A law in the latter class is general not because it embraces all the governed, but because it may, from its terms, embrace all who occupy a like position to those included. As to a law of this class the constitutional provision does not prohibit the legislature from classifying persons and objects for the purpose of legislative regulation or control and from passing laws applicable only to such persons or objects, provided there is a reasonable basis for differentiating between the class to which the law is applicable and that of another to which it does not apply. (*People* v. *Chicago Transit Authority*, 392 Ill. 77; *People ex rel. City of Springfield* v. *Edmands*, 252 Ill. 108.) * * * The legislature may, in the enactment of general laws, classify counties and other municipalities, and legislation has been sustained relating to counties classified on the basis of population. *Cummings* v. *City of Chicago*, 144 Ill. 563."

Applying the foregoing principles to the case at hand it is to be seen that the Public Building Commission Act operates uniformly in all counties throughout the State under like circumstances and conditions and that it is not a local law. (Cf. *Kloss* v. *Suburban Cook County Tuberculosis Sanitarium District*, 404 Ill. 87; *People ex rel. Hatfield* v. *Grover*, 258 Ill. 124.) Nor do the provisions vesting initiative in the government of the county seat and fixing the territorial limits of a commission to the limits of the county seat effect an arbitrary or discriminatory classification. That there is a substantial difference in the situation and public building needs of a municipality which houses a

county seat and one that does not, is readily apparent. A county government is charged with duties and functions which affect all its inhabitants both from corporate and unincorporated areas; the vital statistics and records for the entire county are registered, kept and stored in the county seat; the circuit, county and probate courts, as well as the jurors who serve them, must be accommodated there; the prosecution and detention of criminals is largely accomplished there; tax and school records for all the districts of the county are likewise maintained there; and it is the focal point for numerous districts, commissions and other agencies which serve the whole county. In short, the public building conditions at a county seat affect the welfare and interests of the entire county as contrasted with the interests of the inhabitants of a single municipality. Additionally, it is largely in county seats the inconvenience of decentralization are felt, due to the fact that both local and county governments function there, and because liaisons with higher governmental agencies usually occur there. It is true that the municipalities located outside the territorial limits of a county seat may be confronted with similar building problems but such fact does not have the effect of making the classification discriminatory. It is stated in *Gill* v. *Boston Store*, 337 Ill. 70, that the legislature is not bound to pass a law meeting every exigency but may consider degrees of evil, and that if a law hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied. We conclude that the classification made by the statute is based upon a substantial difference in the situation of county seats which has a rational relation to the legislative objective of providing for adequate public buildings. The act does not, therefore, violate the precepts of section 22 of article IV.

For his final point appellant contends that the act unreasonably excludes forest preserve districts from its bene-

fits. This contention is based, not upon the terms of the act, but upon the fact that no companion legislation was enacted to permit such districts to enter into leases with a commission. Municipal corporations, such as forest preserve districts, are creatures of the legislature and the extent and duration of powers vested in them rests entirely in the legislature. (*People ex rel. Gutknecht* v. *City of Chicago*, 414 Ill. 600.) Section 14(h) of the act being considered here authorizes commissions to rent space to any municipal corporation maintaining an office or rendering a public service in the county. The act itself, therefore, discriminates against no municipal corporation in the county. We cannot say that invalidity arises by association, merely because the legislature did not see fit to amend the Forest Preserve District Act by extending to such districts the authority to enter into leases with a commission.

We are of the opinion the Public Building Commission Act is not subject to any of the constitutional objections raised, but it is our further opinion that the circuit court erred in its finding that leases executed by a municipality with a commission would not create a municipal indebtedness within the definition and limitations of section 12 of article IX of the Illinois constitution. As modified in this respect, therefore, the judgment striking appellant's complaint in *quo warranto* is affirmed.

*Judgment modified and affirmed.*